No. 25,175.

GRANT W. HARRINGTON, *Plaintiff,* v. JOHN EDWARD SMITH, other-
wise known as J. E. SMITH, *Defendant.*

SYLLABUS BY THE COURT.

1. QUO WARRANTO—*Commissioner of Elections—Official Misconduct—Hearing
   and Finding by the Governor—Removal from Office.* Under a statute pro-
   viding that a public officer may be removed by the governor for official mis-
   conduct, without prescribing any method by which the fact of misconduct
   is to be established, the governor's finding of its existence made upon evi-
   dence taken at an investigation conducted by him, the officer having had
   notice and an opportunity to be heard, is a sufficient basis for a valid order
   of removal.

2. SAME—*Action Properly Brought in Name of Party Claiming the Office.* It
   is held that the petition in this case asserts the plaintiff's present right to
   a public office and that the action is properly brought by him in his own
   name to obtain its possession and enjoyment.

3. SAME—*Duty of Commissioner of Elections to Appoint Election Officers.*
   The commissioner of elections of Kansas City, Kan., is required by statute
   to appoint the election officers for a general election—a part of them upon
   the recommendation of the chairman of the county central committees of
   the two leading political parties—and to send notice to the appointees at
   least ten days before the election.

4. SAME—*Finding of the Governor of Official Misconduct Not Subject to Re-
   view by the Courts.* Under a statute authorizing the governor to remove
   a public officer for official misconduct an order of removal made upon evi-
   dence (the officer having had notice of the investigation and an opportunity
   to be heard) is not subject to review by the courts, but is conclusive if made
   in good faith and can only be set aside for fraud or its equivalent.

Original proceeding in quo warranto. Opinion filed July 14, 1923. Judg-
ment for plaintiff.

*W. K. Ward,* and *Fred Robertson,* both of Kansas City, for the plaintiff.

*J. H. Brady,* of Kansas City, for the defendant.

The opinion of the court was delivered by

MASON, J.: On May 1, 1922, J. E. Smith became commissioner of
elections for Kansas City, Kan., for a four year term. On June 7,
1923, the governor made an order removing him upon·charges of
misconduct, after a hearing, of which he had notice and at which
he appeared, and on the next day appointed Grant W. Harrington
to fill the unexpired term. Smith refused to surrender the office
and Harrington brings this action to obtain possession of it.

Harrington v. Smith.

1.  The statute relating to the appointment of a commissioner of elections in cities of the class and size of Kansas City contains the provision that "he may, for official misconduct, be removed by the governor" (Laws 1921, ch. 109, § 1), nothing being said as to the procedure to be followed.  The defendant contends that the extent of the governor's power in the matter is to cause an action to be brought seeking his removal by the judgment of a court.  A similar contention was made where the governor ordered the removal of the warden of the penitentiary, and in holding it not well taken this court said:

"The act in relation to the penitentiary provides that the warden may be removed by the governor for cause, but it does not in terms provide how the cause shall be ascertained.  In the absence of such a provision, it is generally held that it rests with the governor to adopt a method of inquiry and ascertainment which his judgment may suggest, providing a reasonable notice is given to the official and a fair hearing had upon the charges preferred; and when proof is offered he is the exclusive judge of the cause and of the sufficiency thereof."  (*Lynch v. Chase,* 55 Kan. 367, 375, 40 Pac. 666.)

In that case, however, a supplementary statute provided a method for the hearing and determination of charges against such an official.  Later the governor made an order removing the commissioner of elections for Topeka and its enforcement was resisted on the ground that an effective removal could only result from the decision of a court.  The statute there involved, so far as affects this question, was precisely the same as that here under consideration; it said of the election commissioner that "he may for official misconduct be removed by the governor," but provided no method by which the fact of misconduct was to be established.  (Laws 1889, ch. 206, § 2.)  The governor's order was sustained, the court saying: "Even where the tenure of an office is declared by law, but power is given to remove for cause or for official misconduct, all that seems necessary is due notice of the charge preferred, and a hearing thereon, with opportunity to the accused officer to be heard in his own defense."  (*McMaster v. Herald,* 56 Kan. 231, 235, 42 Pac. 697.)  The decisions in the cases cited are approved and are conclusive against the defendant upon this phase of the controversy.

2.  The defendant also contends that the language of the plaintiff's petition characterizes it as one seeking to obtain a right to the office and not one to enforce such a right already existing, and that the action is therefore one for a judicial ouster, to be had only through a proceeding brought in the name of the state on the rela-

tion of the attorney-general or county attorney. A part of the prayer of the petition is that the defendant be ousted from the office of commissioner of elections and that the plaintiff be "awarded the right to immediately occupy and discharge the duties of the same." The petition as a whole makes it entirely clear that the plaintiff claims the present title to the office and invokes the aid of the court to give him its possession and enjoyment. The language quoted is not inconsistent with that theory. The action being brought by one claiming the office in controversy is properly prosecuted in his own name. (*Campbell v. Sargent,* 85 Kan. 590, 594, 118 Pac. 71.)

3. The principal misconduct charged against the defendant and found by the governor to have been proved was his willfully refusing to appoint members of the election boards and notify them of their appointment at least ten days before the last general election, and in other ways placing obstacles in the way of the timely qualifications as such officers of the persons recommended by the chairman of the county central committee of the democratic party. The defendant urges that the charge if true would not justify his removal because the statute does not require the election commissioner to notify election officers of their selection ten days before the election nor to make appointments upon the recommendation of the chairmen of the county committees of the political parties. A section of the Australian ballot law as amended in 1901 contains these provisions:

"It shall be the duty of the mayor of each city of the first and second class, at least ten days before the day of election, to designate and appoint five persons in each voting precinct of such city, who shall be qualified voters of the precinct for which they are appointed, to act as judges and clerks of said election. Said mayor shall cause said judges and clerks to be notified in writing of their appointment, and they shall each appear before the clerk of said city at least one day before the day of election and take and subscribe an oath to faithfully and honestly perform their duties as judges and clerks of the election. . . . One of said judges and one of said clerks to be appointed by said mayor . . . as aforesaid shall be taken from the political party that polled the largest number of votes in the state at the last state election for the office of governor, and one of said judges and one of said clerks from the political party that at said election cast the next highest number of votes for the office of governor. Said two judges and said two clerks shall be appointed by said mayor . . . upon the recommendation of the chairman of the county central committees of said political parties, provided such there be: *Provided,* That in the appointment of judges and clerks for city elections in cities of the first and second class, the mayor shall be governed by the recom-

mendations of the chairman of the city central committees of the several po-
litical parties. The third judge shall be selected and appointed by the mayor,
by and with the consent of the city council, or by the township trustee, with-
out such recommendations. And if any of said judges or clerks shall fail or
refuse to appear and serve at the proper time and place, or for any cause are
or become disqualified, then the electors present shall select from their number,
*viva voce,* such persons from the political parties as herein designated to fill
such vacancies, who shall take and subscribe the same oath prescribed for
judges and clerks of election." (Gen. Stat. 1915, § 4213.)

A section of the statute enacted in 1907 relating to elections in
cities of the first class reads in part:

"The commissioner of elections shall appoint the judges and clerks of elec-
tions in the manner prescribed by the Australian ballot law. . . . The com-
missioner of elections shall send the notice of their appointment to each of
said judges and clerks at least ten days prior to each election, and they must
appear before him at his office at least five days before the election for which
they were appointed to take the oath of office and qualify as such judges and
clerks; and on failure of any elector so appointed to appear and qualify be-
fore said time expires, the commissioner of elections shall immediately fill
such vacancies from the qualified electors in the precinct in which such
vacancy occurs; . . . If any of said judges or clerks shall fail or refuse to
appear and serve at the proper time and place, then the electors shall select
from their number, *viva voce,* persons from the bystanders to take the place
of the absent judge or clerk, to fill such vacancies." (Gen. Stat. 1915, § 1068.)

We think it clear that the two statutes construed together require
that at a general election the election commissioner shall appoint
the election officers; that he shall send them notice of their appoint-
ment at least ten days before the election; and that a part of them
shall be appointed on the recommendation of the chairmen of the
county central committees of the two leading political parties.

The defendant suggests that the matter may be affected by the
statute requiring double election boards in certain cases, particularly
by the provisions reading:

"*Provided further,* That in cities having a commission form of government
and also having an election commissioner, said commissioner shall have the
appointing power subject to the general provisions of this act, as to the party
representations on the board. . . . *And provided further,* That in cities of
the first class which have an election commissioner the duties of mayor herein
assigned shall devolve on such commissioner: *Provided,* That the provisions of
this act may be extended to election precincts where the number of votes are
less than two hundred if the election commissioner, mayor or township trustee,
shall so determine." (Laws 1921, ch. 181, § 1.)

It is immaterial for present purposes whether the provisions just
quoted affect the duties of the election commissioner with respect

to the appointment and notification of election officers. It has not been shown that the controversy arose over the selection of double election boards and in any event the question of fact was one to be passed upon by the governor and not by this court.

4. The defendant further urges that assuming the law to be that ten days' notice should have been given by him of the appointment of election officers and that this was not done, the omission affords no basis for a removal because it does not imply turpitude, and could be readily accounted for by the difficulty of reconciling and interpreting the various statutory provisions, and by the hurry and confusion which necessarily attend the preparation for an election. To this it must be said that the charges and findings clearly relate to an intentional and not a mere inadvertent breach of duty. The statute in empowering the governor to remove the election commissioner for official misconduct makes him the exclusive judge of whether such a breach had occurred; he is made a nonjudicial tribunal for the ascertainment of the fact. His decision on the subject is not subject to review by the courts. However erroneous it may be it is final and controlling if made in good faith—it can be successfully attacked only for fraud or its equivalent. This principle is too familiar to require the citation of authorities. Cases on the subject are collected in *Photo Play Corporation v. Board of Review,* 102 Kan. 356, 359, 169 Pac. 1154. Even though a result is based upon the misconstruction of the statute—an error of law—it is not necessarily to be set aside on that account. Rules of procedure, such as those governing the admission of evidence, which are binding upon courts, are not required to be followed by nonjudicial tribunals. (*Meffert v. Medical Board,* 66 Kan. 710, 72 Pac. 247; *Allen v. Burrow,* 69 Kan. 877, 77 Pac. 1133.) There is no occasion to review the evidence since it is quite immaterial what conclusions the court would arrive at from its consideration.

Judgment is accordingly rendered in favor of the plaintiff.