No. 29,636.

M. F. Gundelfinger, *Appellant*, v. E. W. Thiele et al., *Appellees.*

(298 Pac. 769.)

Opinion filed May 9, 1931.

*N. J. Ward,* of Belleville, for the appellant.

*Charles L. Hunt* and *Frank C. Baldwin,* both of Concordia, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by M. F. Gundelfinger, city marshal and traffic officer of the city of Hanover, against the mayor and members of the city council for the alleged wrongful removal of the plaintiff from his office. Hanover is a city of the third class. The plaintiff was appointed to the office of city marshal and traffic officer by the mayor, and the appointment was approved by the city council on May 7, 1928. On June 9, 1928, at a special meeting of the city council, held to inquire into complaints of the conduct of the officer, a hearing was had and on June 11 the order was made declaring the offices held by plaintiff to be vacant. On receiving notice of the action of the council Gundelfinger turned over the city property in his possession, consisting of a revolver, stars, jail key, billy club, police whistle and a box of shells, which had been delivered to him upon his appointment to office.

In his petition plaintiff alleged that the defendants were individually liable to him for damages by reason of the fact that they conspired together to remove him from office wrongfully and not in accordance with the law providing for the removal of officers. That the removal was done willfully, maliciously and intentionally, for the purpose of injuring plaintiff, and partly at least because the plaintiff had caused the arrest of Father Koeperich for violating an ordinance of the city, and that upon the arrest being made, Father Koeperich acknowledged a violation of the ordinance and acquiesced in the judgment assessing a fine and costs against him, which he paid. Defendant Rowland did not vote on the motion for removal, but, it is alleged, acquiesced in, and ratified the acts of these defendants in the wrongful removal by accepting the office and performing the duties of the office of city marshal from June 11, 1928, and by accepting salary and emoluments thereof since that date. It was alleged that the removal had greatly humiliated the plaintiff and caused him mental suffering, and the acts of the defendants being willful and malicious entitled him to exemplary damages, which he claimed.

In the answer of the defendants, except Rowland, it was admitted that plaintiff had been legally appointed to the office mentioned, but that he had been removed from the office for a good cause. That

they acted in good faith and in the honest belief that his removal was for the best interests of the city. · They further alleged that the plaintiff, upon being notified of his removal, acquiesced in the removal by turning over all the city property held by him and is estopped from challenging the legality of the removal. That in addition he had made a final and complete settlement of his claim for services by accepting from the city the amount due therefor up to the time of the removal. When the case came on for trial the defendants objected to the introduction of any evidence on the ground that the petition did not state a cause of action. This objection was overruled and some evidence was then produced by the plaintiff. Evidence was offered as to the failure of the defendants to pay his claims for services after his removal, claims which were presented monthly until the terms of the defendants as members of the council had expired. The plaintiff testified that he attended a meeting of the council on June 9, but knew nothing of the meeting of June 11, the date when the order of removal was made. The purpose of the meeting which he attended was to consider his action in the arrest of the priest, and he was there to explain, and at the trial when asked what statement he had made, an objection to it was sustained. Thereupon plaintiff offered to show that just preceding the meeting of June 9· he had made the arrest, had taken the priest before the police judge, where he pleaded guilty to the charge and a· small fine was assessed and the fine and costs were paid, and further that between that time and the meeting of June 9 some of the defendants, who acted for themselves and for the other defendants, told him that there was trouble on account of the arrest of the priest and asked him to resign. That thereupon he explained the circumstances of the arrest, which was for violation of the speed ordinance, and the plaintiff then asked to attend the meeting of the council that was being held and there made the same explanation, and was given to understand that it was satisfactory. That on learning of his removal on June 11 he turned over the city property in his possession, under the belief that the law required it of him, and had no intention to abandon his claim to the office or to the salary. That he had no notice of the meeting of June 11, had no knowledge of what was done at that meeting, and he was never given a chance of a hearing at that meeting. To this offer an objection was made, which the court sustained. The plaintiff then inquired of a witness as to whether there had been a written call for

the meeting of June 11, signed by the members of the council, and to an objection made, the offer was refused. At that time the defendants renewed their objection to the introduction of testimony upon the ground that the plaintiff's petition wholly fails to constitute a cause of action, and that this, with the evidence already given in behalf of plaintiff, established that the plaintiff is without right to recover.

One of the points made was that plaintiff had never brought an action before the commencement of this action challenging the sufficiency and the validity of the order of the city council removing him. The court then remarked in substance: "I will have to sustain the objection. According to my judgment the plaintiff is not entitled to sue for damages until he establishes the invalidity of the order discharging him and that under the law he cannot maintain this action for damages or challenge the validity of the order of removal, but must do it by direct proceeding to set aside the order and get back the possession of the office." The court then discharged the jury and rendered judgment for the defendants.

It is the contention of plaintiff that the city marshal of a city of the third class has a fixed term of office for one year and that the steps taken by the mayor and council did not accomplish a valid removal of plaintiff from his office. The first and the most argued question is: Do the statutes relating to the appointment and tenure of city marshals in cities of that class provide for a definite and fixed term of office? The following statutory provisions pertain to city marshals as well as to some other officers:

"The mayor, with the consent of the council, may appoint the following city officers, to wit: A clerk, a treasurer, a marshal, an assistant marshal, policemen, and street commissioner. The duties and pay of the various officers provided for in this section shall be regulated by ordinance. And by vote of a majority of all the members elect of the council any such officer may be removed; or, for good cause, the mayor may remove any such officer, with the consent of the council." (R. S. 15-204.)

"In all cities of the third class the mayor shall, at the first regular meeting of the city council in May, 1901, and each year thereafter, by and with the consent of the council, appoint the following officers: A city clerk, city treasurer, city marshal, and may appoint a street commissioner and such other officers as may be deemed necessary." (R. S. 15-205.)

"The mayors of cities of the second and third class may, by and with the consent of the council, for good cause, remove any such officers whose appointment is herein provided for." (R. S. 15-206.)

"Upon complaint made to the mayor, or president or acting president of

the council, that any marshal, assistant marshal or policeman has been intoxicated, or has been gambling, or has abused the power of his office, or been guilty of a brutal or indecent act, or has taken or received any money, property or valuable thing whatever, other than his legal salary or fees, as a consideration for doing or omitting to do any particular act, the officer so receiving such complaint shall lay the same before the council at their first meeting thereafter. The council shall carefully and honestly inquire as to the truth of such complaint, and if they find the accused guilty, they shall forthwith, by order to be entered on their journal, remove him from office; and he shall not be again appointed to such office unless two-thirds of the councilmen-elect consent thereto." (R. S. 15-604.)

The plaintiff contends that R. S. 15-205, which provides that the mayor shall at the first meeting in May, 1901, and each year thereafter, appoint city officers, including a city marshal, has the effect of fixing the term of office at one year. This statute does not in terms fix a definite term, but it is argued that the fair implication of the statute is that the term is to last until the following May. Cases cited in support of that theory are *Burgan v. Civil Service Com.*, 84 N. J. L. 219; *Bruce v. Matlock*, 86 Ark. 555. These authorities are based to an extent on related statutes which are held to manifest a legislative intent to fix a definite term. The fact that the mayor with the consent of the council is to make appointments annually in May of each year, does not necessarily mean that the intent was to confer a definite term of office upon the city marshal. In New York a statute was enacted which provided that the mayor of the city with the council should biennially appoint certain officers, including a street commissioner. A controversy arose as to which of two claimants who had been appointed was entitled to the office of street commissioner. One of them claiming that he had been appointed by the governing body of the city at a certain time under a statute which provided this body should biennially appoint the street commissioner, and other officers, it fairly implied that it conferred on him a two-year tenure of the office. The question raised hinged on the point whether the use of "biennially" in the statute meant the time when appointments are made or whether it prescribed the term of office of the appointees. It was decided that the statute relates to the time when appointments shall be made and was not intended to fix the term or tenure of the office of the appointee. It was said:

"The section cited says the mayor 'shall biennially appoint,' and it means that he must appoint at all hazards, no matter whether the incumbent in office has served two years or less than that period. The word 'biennially' evidently

and beyond any question has reference to the time of the appointment, and in connection with the circumstances under which it is used it signifies that the mayor then and there, immediately subsequent to his accession to the office, shall make the appointment. If it was so designed to refer to a term of two years it would have so said in clear and unmistakable language. In the absence of any such explicit declaration that the term of office shall be for two years the fair, reasonable and plain interpretation of the word 'biennially' is that it relates to the period of time when the appointment shall be made." (*People, ex rel. McCann, v. Kilbourn,* 68 N. Y. 479, 482.)

The other statutory provisions relative to the office of city marshal do not manifest an intention to confer a fixed tenure of office on the city marshal or one that would prevent his removal by the governing body of the city. It is not contested that if no definite term is fixed and there is no constitutional or statutory restrictions, the power of appointment carries with it the power of removal. In R. S. 15-204, in connection with the power of appointment of a city marshal, it is provided that the marshal may be removed by a majority vote of the members of the council, or for good cause he may be removed by the mayor. In R. S. 15-206, which is made applicable to cities of the second and third class, it is provided that the mayor with the consent of the council may remove an appointed officer and thus end his right to the office. In R. S. 15-604 it is provided that the mayor and council, upon complaint that the marshal has been intoxicated, has been gambling, or receiving money or property as a consideration for acts or omissions other than his legal salary or fees, or has been guilty of brutal or indecent acts or has abused the power of his office, may remove him from office. It thus appears that the marshal's incumbency of the office may be shortened by reason of his action or nonaction deemed by the mayor or the mayor and council to be grounds for removal. These provisions were originally enacted at different times and it is said that some of them had operated to repeal and nullify other acts, but it appears that all of them were included in the revision of 1923, and all of them were adopted and reënacted by the legislature in 1923. The revision and adoption by the legislature has been held to be valid. (*State, ex rel., v. Davis,* 116 Kan. 663, 229 Pac. 757.) There appears to be some overlapping and some confusion in the quoted sections, but evidently the revisors and the legislature thought that all should be preserved and continued in force on the theory that situations might arise for the application of the several provisions. Of course, if some of them are found to be irreconcilable

with each other, it would be necessary to determine which was controlling, but so far as the question whether a definite and fixed term of office had been provided for the city marshal, the provisions quoted tend to show that it was not the legislative intent to fix a definite term. As to constitutional officers there is a provision that where the tenure of an office is not declared, the office shall be held at the pleasure of the authority making the appointment. (Const. Art. 15, § 2.)

Assuming that the city marshal was removable by the governing body for cause, one of which is that he abused the powers of his office, the question arises: Was the order of removal invalid? He contends that the inquiry was made at a special meeting of the council, which was not legally called, and that he had no notice of the meeting or of the charges preferred. There is little room for contention as to the legality of the call for the meeting of the council. Under the call made a quorum of the council met on June 9, a member being sick in a hospital, and took up the question of the official conduct of the plaintiff as well as his method in making arrests. It was attended by the plaintiff, however he may have been notified, and according to his evidence and his offer of proof it was shown that he had been asked by some of the defendants to resign. There and then he made his explanations and defense as to his conduct and as to his arrest of the priest. Since he attended the inquiry and made his defense, the matter of formal notice becomes immaterial. The procedure in such a case is summary and informal in character. No procedure is prescribed by statute and it has been said that:

"In a summary proceeding for the removal of officers under the statute the same formality and precision are not required as in a trial before a court, and the accused cannot claim the benefits, incidents and common-law rights pertaining to such a trial, nor has the doctrine of res adjudicata any application in such proceedings." (Lynch v. Chase, 55 Kan. 367, syl. ¶ 7, 40 Pac. 666. See, also, 43 C. J. 501.)

Where the officer has actual notice of the meeting and participates in the hearing, the statutory notice may be considered to have been waived. Under the circumstances plaintiff is not in a position in this collateral attack to question the irregularity of the notice or that a hearing was had. As the power of removal for cause is conferred on the mayor and council, that tribunal is the one to determine the sufficiency of the grounds for removal rather than the

courts. It appearing that the tribunal had the power to act in the matter of removal, its determination as to the sufficiency of the grounds to warrant removal is one within the discretion of the tribunal, and its decision is conclusive in the absence of fraud or its equivalent. (*Anthony v. Halderman,* 7 Kan. 50; *Lynch v. Chase,* supra; *Harrington v. Smith,* 114 Kan. 262, 217 Pac. 270.) While the petition alleges in general terms that defendants willfully and maliciously caused his removal, these epithets without a statement of the specific facts upon which the charge was based raise no issue, and no evidence is admissible thereunder. (*State, ex rel., v. Williams,* 39 Kan. 517, 18 Pac. 727; *Ladd v. Nystol,* 63 Kan. 23, 64 Pac. 985.) The material facts pleaded and shown in the evidence do not show fraud or its equivalent on the part of the defendants. On the record we conclude that the removal of plaintiff cannot be regarded as unlawful, and that the judgment holding he was not entitled to recover damages from the defendants should be, and it is, affirmed.