No. 31,693

S. W. MURPHY, *Appellee*, v. CHARLES F. HOBBS, as Commissioner of Insurance of the State of Kansas, *Appellant*.

(33 P. 2d 135.)

Opinion filed June 9, 1934.

*Roland Boynton*, attorney-general, and *John G. Egan*, assistant attorney-general, for the appellant.

*Lester P. Wilkinson*, of Wichita, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is a mandamus action commenced in the district court of Sedgwick county by S. W. Murphy against Charles F. Hobbs, as commissioner of insurance of the state of Kansas, to require the commissioner to issue a license to the petitioner authorizing him to do business as a life insurance agent.

The plaintiff set out in his petition that he had held such a license and was fully qualified to continue doing so, but that a complaint had been filed with the commissioner against him, and after a hearing before the commissioner his license was canceled and the commissioner refused to renew it. The petition concluded with the prayer under R. S. 1933 Supp. 40-243, as a party aggrieved, to be heard in a court of record and have the commissioner show cause why the license should not be issued. To the petition was attached

a copy of the complaint filed with the commissioner and a statement of the facts in support of the complaint.

An alternative writ was issued, and the state commissioner of insurance answered by referring to the complaint and setting out some of the facts on which the complaint was based and the findings made by his assistant and the conclusion in favor of revoking the license and refusal to reissue the same to petitioner.

On the trial in the district court the evidence was introduced by both parties, which was apparently the same as it was before the assistant commissioner, except a brother of the petitioner, who was out of the state at the earlier hearing, testified in this hearing, and he admitted filling in the answers to questions in the Schell application in the absence of the petitioner and as the general agent of the company directed, notwithstanding he called the attention of the general agent to the fact that some of the answers were incorrect, he having been with the petitioner when the information for the answers was procured.

Neither the petition, the alternative writ, nor any of the evidence set out in the abstract allege or show any arbitrary, fraudulent, unfair or prejudicial conduct on the part of the commissioner or his assistant during the hearing of the complaint, nor during any of the proceedings leading to the revocation of the petitioner's license.

At the close of the hearing in the district court the trial court granted the peremptory writ, from which order the commissioner appealed to this court. The informal findings and conclusions made by the trial court, being given as the decision of the court, are as follows:

"The evidence shows, of course, that things haven't been done just regularly in this matter, and that in all probability Mr. Murphy has been guilty at least of doing things in an irregular way. People in a great many businesses are a great many times not careful enough in the way they obtain and take affidavits and take statements from people and make out papers in blank, but it is a very common thing. Attorneys don't usually do those things, because they know they ought not to be so careless, and that's done in a great many businesses; making out papers in blank and allowing them to be filled in afterwards and signing people's names to them, which is not regular, really amounting, in a manner, to forgery. Mr. Murphy, of course, should be reprimanded for doing that thing.

"On the other hand, it is a hard thing to take away a man's means of making a livelihood in these strenuous times. Doctors' licenses sometimes are taken away after hearings; attorneys are disbarred and their licenses taken away; yet they are reinstated after a short time.

"Mr. Murphy has been without a license to· write insurance for some four or five months.

"I think the evidence shows he has been punished considerably and probably wouldn't do the same thing again.

"I suppose agents frequently do things that are not just according to the letter of the law. They should be more careful about it.

"I am taking into consideration somewhat the appearance of Mr. Murphy and his brother. They appear to be men of considerable intelligence, and it no doubt would be a great hardship upon them to take away their licenses.

·'I am going to grant the writ and the order under this statute and order the commissioner to issue a license to Mr. Murphy.

"Mr. Egan: We except, your honor.

"The Court: Very well. As I say, Mr. Murphy should be reprimanded for doing that.

"There are a good many things that are not clear to me that Mr. Murphy has been guilty of, such as taking off of the policy that was given to this insured a copy of the application. That might have been taken off at any place. It appears that there has been some paper taken off of it, but whether or not Mr. Murphy took it off has not been proven to the satisfaction of the court, and the order will issue and you will be given a stay, if you wish, for a certain length of time, if you wish, to complete your appeal."

R. S. 1933 Supp. 40-243, the section of the statute under which this action has been commenced and is being maintained, does not impose any limitations as to the nature and character of the duties of the court of record in determining whether or not the aggrieved party should be entitled to an order on the insurance commissioner requiring him to issue a license to the petitioner. Under R. S. 1933 Supp. 40-102 and 40-103 the commissioner of insurance is charged with the administration of the laws and duties imposed in relation to the insurance business conducted in the state, among which are the licensing of agents possessing the necessary qualifications and · the revoking of licenses of persons found to be unworthy of the same. (R. S. 1933 Supp. 40-239 to 40-242.) His duties are plainly administrative, including the licensing of agents and the revoking or canceling of such. In that respect his duties are similar to those of state officers and boards whose duties are prescribed by statute, which are generally held to be purely administrative and not in any way judicial, and it has also been generally held that the findings of such administrative officers or boards are final and conclusive, except in the case of fraud, corruption, oppressiveness or prejudice. One of the early decisions along this line was concerning the state board of medical registration and examination and its right to revoke the

license of a practising physician, where the following language was used:

"The state, in the exercise of its police power in the interest of the health, good government, general welfare and morals of the people, may prescribe the qualifications of persons desiring to practice medicine, and may create a board whose duty it shall be to hear and determine any complaint made against any person holding a physician's license, and revoke such license for any cause provided for in the statute. Such board, while so acting, is not a judicial tribunal and is not governed by the technical rules applicable to law courts. In the absence of fraud, corruption, or oppression, the findings of the board are conclusive upon this court." (*Meffert v. Medical Board*, 66 Kan. 710, syl. ¶ 1, 72 Pac. 247.)

This ruling was fully approved and followed in the recent case of *Brinkley v. Hassig*, 130 Kan. 874, 289 Pac. 64, and also in the case of *Jones v. Board of Medical Examination*, 111 Kan. 813, 208 Pac. 639, a mandamus case, brought because of severe and unusual requirements made generally by the medical board as to educational attainments of applicants for licenses. See, also, in the same connection, the case of *Brown v. Hassig*, 136 Kan. 384, 15 P. 2d 401.

In the case of *Jackman v. Public Service Commission*, 121 Kan. 141, 245 Pac. 1047, which was a mandamus case against the public service commission, the court held mandamus was proper where the commission withheld its approval of a certain project merely at its own pleasure or volition and without reference to the merits of the project.

It was said in the case of *State, ex rel., v. Mohler*, 98 Kan. 465, 158 Pac. 408, about the state board of agriculture and the secretary thereof—

"The powers of granting and withholding or revoking licenses to commission merchants, of supervising their dealings with their consignors, of examining their solvency, and of exacting from them bonds to insure their faithful accounting and payment for goods consigned to them are administrative and not judicial." (Syl. ¶ 3.)

"The act of 1915 does not pretend to confer such power on the secretary of the state board of agriculture. It merely confers upon him administrative power such as has become common in this state. The state charter board is given similar power to grant or withhold a charter for a bank. (*Schaake v. Dolley*, 85 Kan. 598, 118 Pac. 80.) The insurance commissioner is authorized to grant, withhold and revoke licenses to transact insurance business in Kansas. The public utilities commission is authorized to grant or deny permits to conduct a public-service business. The state board of medical registration and examination is authorized to grant, deny or revoke licenses to practice medicine. (*Meffert v. Medical Board*, 66 Kan. 710, 72 Pac. 247.) The exercise of

such power is merely the exercise of administrative discretion. If this power is abused, the courts are open to the aggrieved party, if not by some statutory review, then by the extraordinary and prerogative remedies of injunction or mandamus." (p. 471.)

The statute with reference to the aggrieved party having redress in the district court, where the state board of review refused to approve a moving-picture film, is almost identical with that in the insurance law, and it was held in the case of *Photo Play Corporation v. Board of Review,* 102 Kan. 356, 169 Pac. 1154:

"Under the act relating to motion-picture films (chapter 308 of the Laws of 1917) the Kansas state board of review is given full power and discretion to determine whether films and reels offered for its examination and decision are moral and proper for exhibition, and its determination is conclusive and not open to review or interference by the courts unless its action is fraudulent, arbitrary, or in excess of its authority.

"The redress for an aggrieved party provided for in section 15 of the act is not a reëxamination of the picture by the court nor the exercise of an administrative and nonjudicial power, but is such redress as a court may give.

"In the absence of allegations or proof that the board acted arbitrarily or dishonestly, it must be presumed that it acted in good faith and that its determination was an honest exercise of its best judgment." (Syl. ¶¶ 1, 2, 3.)

In the case of *Harrington v. Smith,* 114 Kan. 262, 217 Pac. 270, the governor removed from office the commissioner of elections in the city of Kansas City, Kan., upon charges of misconduct after a hearing, and in a quo warranto proceeding brought by the newly appointed commissioner against the ousted one who refused to surrender the office, it was said:

"Under a statute authorizing the governor to remove a public officer for official misconduct an order of removal made upon evidence (the officer having had notice of the investigation and an opportunity to be heard) is not subject to review by the courts, but is conclusive if made in good faith and can only be set aside for fraud or its equivalent." (Syl. ¶ 4.)

In the Meffert case, *supra,* it was said:

"The revocation of a license to practice medicine for any of the reasons mentioned in the statute was not intended to be, nor does it operate as, a punishment, but as a protection to the citizens of the state." (p. 722.)

This last reference is made because the trial court evidently regarded the cancellation of the license as a punishment. It is not intended for that purpose, but is intended, as stated above, for the protection of the citizens of the state.

The case of *Swearingen v. Bond, Auditor,* 96 W. Va. 193, was an original mandamus proceeding by two fire insurance agents against

the state auditor, *ex officio* insurance commissioner, to require him to issue licenses to them after a full hearing upon the charges of irregularities against them in the insurance business. The supreme court denied the writ, holding that the judgment and discretion of the insurance commissioner "will not be controlled by mandamus, unless it is clear that his decision was the result of caprice, passion, partiality or some ulterior motive." (Syl. ¶ 2.)

In the later case of *Reed v. Lawson*, 109 W. Va. 288, under an amended act the supreme court approved this earlier decision by reversing the trial court and dismissing certiorari proceedings. In both the old and the amended statutes it was provided that the decisions and findings of the insurance commissioner shall be reviewable by proper proceedings in any court of competent jurisdiction within the state.

There being no allegations or proof of arbitrary, dishonest, prejudicial or fraudulent conduct on the part of the insurance commissioner or his assistant in the hearing of the complaint against the petitioner herein, it was purely an administrative matter and the determination of such administrative officer was conclusive, and the only relief the court could give the petitioner under R. S. 1933 Supp. 40-243 would have to be of a judicial character and limited to the granting of redress if he had been arbitrarily, corruptly or fraudulently deprived of his license or of a fair and impartial hearing on the complaint.

We conclude that it was error to retry the merits of the complaint and grant the writ. It is unnecessary to consider other errors assigned by the appellant.

The judgment is reversed, and the cause is remanded with directions to deny the writ.