No. 32,963

THE UNION PACIFIC RAILROAD COMPANY, *Appellee*, v. THE STATE TAX COMMISSION OF THE STATE OF KANSAS, *Appellant*.

(68 P. 2d 1)

Opinion filed May 8, 1937.

*W. B. Crowther,* attorney for the state tax commission, and *Ellis D. Bever,* of Topeka, for the appellant.

*T. M. Lillard, O. B. Eidson* and *Philip H. Lewis,* all of Topeka, for the appellee; *Henry W. Clark,* of New York, N. Y., and *T. W. Bockes,* of Omaha, Neb., of counsel.

The opinion of the court was delivered by

THIELE, J.: This appeal arises under the income tax law as ap-

plied to a corporation whose gross income is derived from property located and business transacted in part within and in part without the state of Kansas.

The income tax law was enacted in 1933 and the return in question was the first to be made under the act by the appellee, which will be referred to hereafter as the company.

Some time prior to April 25, 1934, the company proposed a method of computing its return under what now appears as G. S. 1935, 79-3219. The proposed computation was based on accounts as kept in accordance with regulations of the interstate commerce commission. The proposal, at least in part, did not meet the approval of the state tax commission, hereafter referred to as the commission, and on April 25, 1934, it sent the company a corrected statement concerning the method of allocation to be used by it in making its return. We need not notice the details of the methods suggested, further than to state they provided for direct allocation of many items of revenue and of cost of operation. On July 13, 1934, the company made a return which the commission did not approve for the asserted reason the prescribed allocation method had been disregarded. On August 4, 1934, the company made a return on the prescribed method, but protesting, in part, its correctness. The return as made, however, showed no tax due. The commission, using the same return of information, allocated to the company in Kansas a greater amount of income and a lesser amount of deductions, and found the tax due, without interest, to be $45,-964.29. Thereafter, the company requested a hearing on the tax thus determined, and as a result the commission made its order of April 19, 1935, in which it concluded the original return did not truly reflect income justly allocable to Kansas for the reason it allocated no portion of its taxable interest and dividend income, while it did allocate a part of the total interest paid by it, and that in its opinion related items of income and expense must be allocated on the same basis in order to truly reflect Kansas net income. These items will be referred to later. After stating the company conceded its Kansas income could not be directly allocated on its books in accordance with G. S. 1935, 79-3217, it was stated the formula prescribed in G. S. 1935, 79-3218, or in the alternative in 79-3219, must be followed. The order then continues:

"In the opinion of this commission, the taxpayer's income should be allocated in accordance with the provisions of section 79-3218 of the Revised Statutes, 1933 Supplement, as follows:

1. Interest, dividends, rents, etc., less related expenses:

| *Income* | Total everywhere | Within Kansas |
|---|---|---|
| Joint facility rent | $991,746.81 | $243,316.61 |
| Miscellaneous rent | 311,642.40 | 25,087.88 |
| Lease of road | 61,768.52 | None |
| Taxable dividends | 9,827,809.38 | None |
| Interest funded securities | 6,137,864.73 | None |
| Interest unfunded securities | 41,739.60 | 6,390.33 |
| Interest hands of trustee | 3,963.76 | None |
| Totals | $17,876,535.20 | $274,794.82 |

| *Expenses* | Total everywhere | Within Kansas |
|---|---|---|
| Joint facility rent | $443,444.55 | $18,145.76 |
| Miscellaneous rent | 551.00 | 25.00 |
| Interest on funded debt | 10,185,512.32 | None |
| Interest on unfunded debt | 202,278.79 | None |
| Discount funded debt | 181,105.08 | None |
| Totals | 11,012,891.74 | 18,170.76 |
| Balance | $6,863,643.46 | $256,624.06 |

2. Gains or losses from sale of capital assets:

| | Total everywhere | Within Kansas |
|---|---|---|
| Profit on road equipment | $24.50 | None |
| Loss retired road and equipment | 122,615.87 | $16,890.44 |

3. Total income directly allocated ............ $6,241,028.09 ...... $239,733.62

4. Allocation fraction:

| | Total everywhere | Within Kansas | Percent |
|---|---|---|---|
| (a) Book value of real and tangible property | $388,896,568.00 | $59,722,792.00 | 17.62 |
| (b) Operating expense | 40,563,923.77 | 7,321,788.26 | 18.05 |
| (c) Gross revenue: | | | |
| Operating revenue | 63,357,224.85 | 9,699,004.52 | |
| Rent of locomotives | 157,873.94 | 26,996.44 | |
| Rent of passenger cars | 778,457.49 | 111,377.88 | |
| Rent work equipment | 3,789.95 | 680.67 | |
| Joint facility rent | 991,746.81 | 243,316.61 | |
| Miscellaneous rent income | 311,642.40 | 25,087.88 | |
| Lease of road | 61,768.52 | None | |
| Totals | $65,657,458.96 | $10,106,464.00 | 15.39 |

5. Total percent ............ 51.06
6. Average percent ............ 17.02
7. Total net income ............ $17,642,480.06
8. Less allocated income ............ 6,241,028.09
9. Apportionable income ............ $11,401,451.97
10. Net income allocated to Kansas (17.02% of $11,401,451.97) ............ 1,940,527.13
11. Total income subject to tax in Kansas ............ $2,180,260.75
    Tax at 2% ............ $43,605.22

And in accordance, the tax was found to be $43,605.22, with interest thereon of $2,616.31.

From this order the company appealed to the district court of Shawnee county, as provided by statute.

As a result of the hearing in the district court, findings of fact and conclusions of law were made. So far as is necessary here, they are as follows:

"FINDINGS OF FACT

VI

"For many years the taxpayer has had a large amount of funds invested in securities which produced, in 1933, interest and dividend income in the total sum of $16,007,413.71. The making and administration of such investments has constituted at all times a business conducted exclusively by the New York office of the taxpayer. Purchases of said investments have been made by its treasurer in the New York security markets. The bonds and stock certificates representing such investments have been received by him and held in his custody. The dividends and interest on such investments are collected by him and deposited in New York banks. No functions concerning these investments or the income therefrom have been exercised by any officers of the taxpayer within the state of Kansas. At no time during the year 1933 were any of the securities from which said dividend and interest income was derived physically within the state of Kansas, and none of said dividend or interest income was derived from property located and business transacted within the state of Kansas.

VII

"The principal item of income of the Union Pacific Railroad Company is its railway operating revenue, i. e., the money it receives for handling freight, passenger, parlor and chair-car traffic. By long usage in railroad accounting there has been a well-defined and clearly established method of determining what portion of the railway operating revenue is earned in a given state. The recognized and approved method of division between states in general use for approximately thirty years is as follows:

"(a) Income from traffic moving intrastate—originating at one point in Kansas and terminating at another point in Kansas—is, in its entirety, Kansas income and is so computed on the books of the taxpayer.

"(b) Income from interstate traffic which moves over a route partly in Kansas and partly in one or more other states is credited as earned income in Kansas on the basis of 'the ratio of the distance within the state that each shipment and passenger is carried to the total distance carried.' The books of the taxpayer are kept on that basis, and all traffic moving wholly in Kansas or partly in Kansas and the earnings therefrom are definitely entered on the books of the taxpayer on that basis. The income tax return filed by the Union Pacific Railroad Company with the tax commission for the year 1933, as shown on schedule B attached to exhibit F introduced in evidence in this case, discloses that the railroad operating revenue was credited to Kansas in this manner.

VIII

"The National Association of Railway Commissioners adopted the above method by resolution in 1908. It has been followed by the Union Pacific Railroad Company for many years. Its books of account on Kansas business and its reports to the Kansas Public Service Commission have been made on that basis at least as far back as 1924.

IX

"Under the same authority the railway operating expenses have been apportioned 'on the basis of the ratio of train miles within the state to the total train miles.' This basis of charging the railway operating expenses to a given state was also adopted and approved by the National Association of Railway Commissioners in 1908, and has been generally followed since that time. The books of the Union Pacific Railroad Company showing its Kansas railway operating expenses and its reports to the Kansas Public Service Commission upon its Kansas expenses have been on that basis at least as far back as 1924. The return filed herein indicates that the expenses of the taxpayer in Kansas were allocated on that basis in schedule B attached to exhibit F.

"The customary method of determining railway operating revenue in the state of Kansas as described above and applied to the determination of railway operating revenue of the Union Pacific Railroad Company for the year 1933 shows that the percentage of gross operating revenue in Kansas, as compared to the total operating revenue everywhere for the year 1933, is 15.39 percent. By applying these methods of computation to the company's railway operating expenses for the year 1933 the operating expenses in Kansas are shown to be 18.05 percent of the total operating expenses everywhere. The term 'operating expenses' is a technical term prescribed by the Interstate Commerce Commission.

XI

"The comparative tabulation set out below shows the effect of the tax commission's final order in the matter of assessing for income tax purposes in Kansas an amount of income or profit which is in no sense justly allocable to business transacted within this state:

| Allocable to Kansas as computed both by the commission and by the taxpayer in accordance with the commission's direction or formula of April 25, 1934 (Ex. C). The figures shown below appear in the first, second and third items in the last column of schedule B, attached to Ex. F in this case. | Allocable to Kansas by applying the 'average percent' or fraction of 17.02 percent as used by the commission in the computation attached to its final order (Ex. J). The 17.02 percent is applied to the figures in the fourth column of schedule B. | The figures below show the hardship worked upon the taxpayer by applying the commission's 'average percent' method to railroad operating revenue and expenses. | |
|---|---|---|---|
| Ry. Opr. Rev.. $9,699,004.52 | $10,783,299.67 | $1,084,395.15 | Excess gross Kansas Revenue |
| Ry. Opr. Exp.. 7,321,788.26 | 6,903,979.83 | 417,808.43 | Shortage Kansas Operating Expense |
| Net Opr. Rev.. $2,377,216.26 | $3,879,319.84 | $1,502,203.58 | Excess net Kansas Revenue |

## XII

"The effect of applying in the commission's computation the so-called allocation fraction of 17.02 percent to the tax paid by the Union Pacific Railroad Company in the year 1933 is shown by the following tabulation:

Tax accruals as correctly allocated on Schedule B of Exhibit F:

| | |
|---|---|
| Tax paid in Kansas, state and county | $939,218.02 |
| Federal taxes apportioned to Kansas | 187,068.90 |
| Total taxes apportioned to Kansas | $1,126,286.92 |

| | |
|---|---|
| Tax accruals as allocated to Kansas on the commission's average percent of 17.02 under formula of Exhibit J | 891,461.38 |
| | $234,825.54 |

leaving a shortage of $234,825.54 less than the company was actually entitled to.

## XIII

"In computing its final order the Tax Commission allowed no deduction on account of expenses for interest paid out. These interest payments were on bonded indebtedness of the company secured, in part, by a mortgage on the property of the company located in the state of Kansas.

## XIV

"In its return to the commission showing taxable income, the Union Pacific Railroad Company computed the portion of expense deductible on account of interest paid out 'in the ratio which Kansas railway operating revenue bears to total railway operating revenue' as follows:

| | |
|---|---|
| Interest on funded debt | $1,559,401.94 |
| Interest on unfunded debt | 30,968.88 |
| Amortization of discount on funded debt | 27,727.19 |

## XV

"None of the interest paid out by the Union Pacific Railroad Company in the year 1933 was upon indebtedness incurred or continued to purchase or carry obligations or securities the interest on which is exempt from the taxes imposed by the Kansas statutes, except such as may have been acquired by the reorganization committee in its purchase of the property and assets of the predecessor to the present company.

### "CONCLUSIONS OF LAW

#### I

"Under the provisions of section 79-3206, R. S. 1933 Supplement, the Union Pacific Railroad Company is entitled to deduct (a) all interest paid during the taxable year on indebtedness, except on indebtedness incurred or continued to purchase or carry obligations or securities the interest on which is exempt from the taxes imposed by this act, and (b) taxes paid during the taxable year.

#### II

"The dividend and interest income of the Union Pacific Railroad Company has no taxable situs in the state of Kansas.

III

"The method of allocating Union Pacific Railroad Company income to Kansas as adopted by the tax commission in the order appealed from is, as to that company, impracticable and inequitable, and works an undue hardship upon the taxpayer.

IV

"The proper method for determining the net income for the Union Pacific Railroad Company in Kansas is that followed by the company in its return as filed with the commission on July 14, 1934, as shown in exhibit D and the accompanying schedule A.

V

"Upon proper computation the Union Pacific Railroad Company had no net income in Kansas for the year 1933, but had a deficit of $464,920.95 on its Kansas business for that year.

VI

"There is no tax due from the Union Pacific Railroad Company to the state of Kansas under the income tax law for the year 1933."

In accordance with its findings and conclusions, the trial court set aside the order of the commission of April 19, 1935, and enjoined it from taking any steps to collect an income tax from the company for the year 1933. The commission appealed to this court, assigning as error the failure of the trial court to make findings of fact and conclusions of law as requested by it; refusal to grant a new trial, error in conclusions of law, and in fixing and determining the amount of tax due.

When this appeal was first submitted the commission contended that the final determination of the commission under G. S. 1935, 79-3218, and as shown by its order of April 19, 1935, was a reasonable apportionment of the company's income and should be sustained, and that the company was not entitled to deduct certain capital charges in computing its net income from property and business in Kansas regardless of the method of allocation used. The principal items in dispute were interest on bonds and dividends on stocks representing the company's invested surplus, as income, and interest on its mortgage debt, and taxes actually paid by it in Kansas, as deductions.

Not being fully satisfied as to the situation then presented, this court ordered a reargument with directions that the commission more fully present the theory as to liability for tax on which its conclusion was based. In connection with the reargument, appellant filed a supplemental brief in which it was stated that with reference

to whether any portion of the interest and dividend income of the company had a tax situs in Kansas, and whether interest was paid out on indebtedness incurred or continued to purchase or carry obligations or securities the income from which is exempt from tax, the trial court had made findings of fact adverse to the commission's contentions, and there being evidence to support the findings, this court was asked not to consider that issue further. At the reargument it was conceded that, as applied to the facts, the commission's allocation was incorrect in that income from joint facility rents, miscellaneous rents and use of roads, after being directly allocated, as shown in (1) of the order of April 19, 1935, were thereafter included as factors in determining the allocation fraction, as shown in (4) of said order. The commission likewise recognized an inherent weakness in the application of its allocation fraction in that it used as its base therefor the identical amounts for operating expenses and gross revenue which were contained in computations made by the company in the returns which the commission disapproved. It thus becomes apparent that appellant has abandoned some of its specifications of error, and that it has receded in part from the position taken by it in the trial court.

However, the principal question, originally before the commission and later before the district court, was the proper method of allocating income of a taxpayer, such as the company here, and we shall give that question consideration. In the original briefs filed there is considerable discussion as to the invalidity of the assessment as made by the commission's order of April 19, 1935, and various decisions of the federal courts are cited. Especial attention was directed to *Hans Rees' Sons v. No. Carolina,* 283 U. S. 123, 51 Sup. Ct. 385, 75 L. Ed. 879, where a review of previous decisions of that court was made, and after consideration of theories as to unitary use of the taxpayer's property, methods of allocation of net income, etc., it was concluded the method used operated unreasonably and arbitrarily in attributing to North Carolina a percentage of income out of all appropriate proportion to the business transacted by the taxpayer in North Carolina. By reason of admissions made it is apparent that we are not now confronted with the precise question originally presented to the trial court, and no good purpose will be served by extended examination of authorities from other jurisdictions dealing with the question of allocation and associated questions. In the report of the Hans Rees' Sons case, appearing in the

Law Edition, may be found extended discussion of the basis upon which tax may constitutionally be levied on income from enterprises conducted in the taxing state and elsewhere. In 27 A. L. R. 906 may be found an annotation on the doctrine of unity of use for purposes of taxation of the property of a corporation engaged in business in more than one state; and in 67 A. L. R. 393 is an annotation on the situs of personal property for taxation of income.

Our problem, as now presented, is limited, and we shall discuss it with respect to our statute only. In enacting the income tax law (Laws 1933, ch. 320, now appearing, as amended, as G. S. 1935, 79-3201 to 79-3240, incl.), the legislature made provision for determining gross income, allowable deductions and net income, and recognized that with respect to nonresident individuals and corporations whose gross income was derived from property located and business transacted partly within and partly without the state, some difficulty would arise in determining just what constituted that part of the net income which should be taxed within this state. For convenience, we shall hereafter refer to sections of the above act by original section numbers.

Section 3 provides:

"(b) *Corporations.* Corporations shall pay annually a tax with respect to carrying on or doing business of 2 percent on the entire net income, as herein defined, derived from property located and business transacted within this state during the taxable year. . . ."

Section 5 defines "gross income." Under section 6 it is provided:

"(a) In computing net income there shall be allowed as deductions: . . . (2) all interest paid during the taxable year on indebtedness, except on indebtedness incurred or continued to purchase or carry obligations or securities the interest upon which is exempt from the taxes imposed by this act; (3) taxes paid during the taxable year, except income taxes paid under the provisions of this act, income taxes paid to another state, . . . and taxes assessed against local benefits of a kind tending to increase the value of the property assessed; . . ."

Section 9, in part, defines "net income" as:

"(a) The net income shall be computed upon the basis of the taxpayer's annual accounting period in accordance with the method of accounting regularly employed by the taxpayer, but if no such method has been employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the tax commission does clearly reflect the income. . . ."

Under the heading "Allocation of Income" are three sections, viz.:

SEC. 17. "In the case of . . . corporations the gross income of which is derived from property located and business transacted in part within and in part without this state, direct allocation of such income may be made where practicable on the books of account and records of the taxpayer, together with the deductions applicable thereto, where such methods clearly reflect the net income, and returns made on such basis shall be accepted in computing the tax.

SEC. 18. "In any case where the nature of the business is such as to render direct allocation impracticable or where the books of account and records do not clearly reflect the net income subject to tax by this act, allocation shall be made as follows: (a) Interest, dividends, rents, royalties, and other similar items of gross income, less related expenses, shall be allocated to this state if received in connection with business transacted and property located within this state. . . . (c) The remainder of the income not allocable under (a) and (b) shall be allocated by taking the arithmetical average of the following factors: (1) The ratio of the average cost at the beginning and end of the taxable year of the real and tangible personal property owned and used in connection with the business carried on within this state, to the average cost at the beginning and end of the taxable year of the total real and tangible personal property owned and used in connection with the business carried on everywhere; (2) The ratio of the total cost of manufacturing (including collecting, assembling, processing or operating) or selling, depending upon the particular type of business, properly attributable to the business carried on within this state during the taxable year, to the total of such costs in connection with business carried on everywhere during the taxable year. The provisions of this subsection shall be interpreted in accordance with the accepted accounting practice in the trade or business; (3) The ratio of the gross sales or revenue in connection with the business carried on within this state during the taxable year, excluding, however, any income received from the sale of capital assets and other property not sold in the regular course of business, and also income from interest, dividends, rents and royalties, separately allocated as above provided, to the gross sales or revenue from business carried on everywhere during the taxable year.

SEC. 19. "(a) In any case where the methods of allocation as prescribed in sections 17 and 18 are impracticable or inequitable, so as to work an undue hardship upon the taxpayer, or in case the factors mentioned in sections 18 (c) (1), (2), and (3) cannot be ascertained from the taxpayer's records or do not apply in any appreciable extent to the business, then the taxpayer shall determine, subject to the approval of the tax commission, the fair net taxable income allocable to this state by such method as will equitably allocate to this state a just portion of the total net income. If in the judgment of the tax commission such method does not clearly reflect the income justly allocable to this state, the tax commission may prescribe methods, rules or regulations for properly determining the income taxable under this act, but in no case shall the income computed as prescribed by the tax commission exceed the income which would be allocable to this state if computed in accordance with the provisions of section 18. . . ."

As has been stated, the company proposed making its return under section 19, and did make returns, under regulations of the commission, under that section, which the commission disapproved. The order appealed from was made by the commission under section 18. The trial court held the return was properly made under section 19.

It will be observed that under the statute corporations shall pay a tax on entire net income, as defined in the act—

"derived from property located and business transacted within this state," etc. (Sec. 3 [b])—

and that in computing net income certain deductions are unequivocally allowed (sec. 6 [a]). The statute also recognizes that accounting methods may not clearly reflect net income, in which event the computation shall be made "in accordance with such method as in the opinion of the tax commission does clearly reflect the income" (sec. 9 [a]).

Recognizing that there would be instances where books of account would not show income in this state derived from property located and business transacted within this state, three general rules for allocation of such income were provided. Section 17 has to do with a situation where the books clearly reflect income and deductions and direct allocation can be made. It is conceded it is inapplicable in the instant case. The question here is whether section 18 or section 19 applies. It may be observed that section 18 sets out a definite plan for making allocation, and that section 19 permits the commission to allow deviation therefrom, where otherwise literal compliance would be impracticable or inequitable or work undue hardship. Section 19, however, provides that income computed under this section cannot exceed income computed under section 18, and it therefore appears that in any event the general method prescribed in section 18 may be applied if only for the purpose of determining whether or not there is excess.

Although the commission's various instructions to the company and what was done prior to the order of April 19, 1935, were inconsistent in their several parts, it must be remembered that administration of a new act was just getting under way, and the various returns made evidenced a situation of facts where the commission may have been warranted in making change in the method of computation. The question of the exercise of its judgment and discretion will be treated later.

No good purpose will be served by making critical analysis of

section 18 and attempting to show either its present applicability or lack of it, for the reason that the order of April 19, 1935, although purporting to be made under the method there prescribed, in fact is not. As has been stated, certain items directly allocated were later erroneously included in making up the allocation fraction. It also appears there was failure to take into consideration the amount of taxes actually paid in the state of Kansas and to allocate to Kansas a portion of the tax paid to the United States. It further appears that although no portion of dividends or interest on the securities representing the company's surplus, said to have a tax situs outside of Kansas, was directly allocated as part of Kansas' net income, on the theory that interest paid on the company's funded debt was a related expense, no deduction was allowed for any interest paid. The mere fact the company received interest from one source (surplus) does not make interest paid on obligations (mortgages on its property in Kansas and elsewhere) a related expense. There should have been an allocation to Kansas of a portion of this interest paid.

The company argues that section 18 refers to mercantile and manufacturing companies and is wholly inapplicable to a public utility such as the taxpayer here. While it may be that it cannot be applied in all its parts, an examination of its requirements, in connection with the provisions of section 19 allowing deviation to avoid an inequitable result or an undue hardship to the taxpayer, leads to the conclusion that it at least sets up a framework for the method to be followed.

It will be observed that in section 9 provision is made for computation of net income "in accordance with such method as in the opinion of the tax commission does clearly reflect the income" and in section 19, methods of allocation proposed by the taxpayer shall be "subject to approval by the tax commission," and that "if in the judgment of the tax commission such method does not clearly reflect," etc., the commission may make rules, etc., to determine the taxable income. It clearly appears that an administrative duty is cast upon the commission, and that it is a duty to be performed by it and not by the court. As was said in *Kansas Gas & Electric Co. v. Public Service Comm.*, 122 Kan., 462, 251 Pac. 1097:

"Time and again this court, in consonance with the prevailing attitude of courts throughout the country, has declared that it will not substitute its judgment for that of some administrative tribunal created by legislative authority for dealing with matters of nonjudicial character." (p. 468.)

(See, also, *Bank v. Geary County*, 102 Kan. 334, 170 Pac. 33;

*Wichita Gas Co. v. Public Service Comm.*, 132 Kan. 459, 295 Pac. 668; *Southern Kansas Stage Lines Co. v. Public Service Comm.*, 135 Kan. 657, 11 P. 2d 985; *Murphy v. Hobbs*, 139 Kan. 799, 33 P. 2d 135, and the discussion herein with respect to the right of appeal.) The function of the trial court was to see that the action of the commission was not fraudulent, unreasonable, arbitrary, oppressive or discriminatory, and not to substitute its judgment for that of the commission. Findings of fact VII, VIII and IX, while supported by evidence, have no application here unless the trial court had power and authority to determine the method of allocation to be applied. Our conclusion is that it was without that power and authority.

Referring to the conclusions of law, we hold Nos. I and II were correct. Insofar as No. III is concerned, it would have been correct had the word "result" rather than the word "method" been used in referring to the allocation. The fourth conclusion should not have been made. The trial court, being without power to determine the method of allocation and computation, was therefore without power to determine the company had a deficit in its Kansas business for 1933, and that no tax was due, and the fifth and sixth conclusions of law should not have been made. The court's order vacating the order of the commission of April 19, 1935, was admittedly correct, but its order enjoining the commission from taking any steps to collect an income tax from the company for 1933 was erroneous.

In the briefs there is considerable argument as to results following appeal to the district court. It appears that the commission did not ask in the district court that the matter be remanded to the commission in order that it might make another allocation of income and order thereon. It does contend here that if its order of April 19, 1935, be held of no force, the matter should be remanded in order that a proper return be made. Ordinarily we do not consider matters not presented to the trial court, but here, by reason of concessions and admissions made by the commission on this appeal, and because the interpretation of the income tax law with reference to appeals is involved, we shall consider that matter as though the request had been made in the trial court.

Section 27 of the income tax act provides for appeal to the district court by the taxpayer, and that was had in this case. Under subdivision (d), jurisdiction to hear and determine appeals is conferred upon the district court, such appeal to be heard as an equity proceeding and to proceed as an original action. Subdivision (e) provides for appointment of referees, etc., to take evidence, sub-

division (f) relates to appeals to the supreme court, and subdivision (g) provides:

"The final decision made in such appeal shall be entered as a judgment as in other civil cases against the taxpayer or against the state tax commission as the case may be."

Appellee argues that the statute provides for a trial upon the merits and a decision upon the facts and that the final decision is a judgment and final. Attention has been directed to the fact the income tax act casts an administrative duty on the commission. If the legislature, in enacting section 27, intended that in event of an appeal to the district court, that court by appointment of referees, the taking of testimony, etc., could determine the method of allocation to be used and the amount of tax liability of the appealing taxpayer, then the net result was to confer upon a judicial tribunal the performance of a duty not judicial in character.

Our limited time does not permit an exhaustive discussion of our many decisions bearing on the question. In *Auditor of State v. A. T. & S. F. Railroad Co.*, 6 Kan. 500, 7 Am. Rep. 575, a statute, authorizing the state auditor to appeal to the supreme court from certain appraisements and assessments made by county clerks, was under consideration and it was there held:

"The jurisdiction of the supreme court is restricted by the constitution to original proceedings in quo warranto, mandamus and habeas corpus, and such appellate jurisdiction as may be provided by law.

"The appellate jurisdiction can only be given where there has been a decision by one clothed with judicial authority, and acting in a judicial capacity when making the decision.

"The power to tax is a legislative power, and not in any sense judicial.

"The valuation of property for purposes of taxation is an incident to the taxing power, and therefore not such judicial power as can be conferred upon the supreme court." (Syl. ¶¶ 1-4.)

In *Symns v. Graves*, 65 Kan. 628, 70 Pac. 591, the right of the court to fix the valuation of property for purposes of taxation was presented, and in discussing it, it was said:

"The district court could not substitute its judgment for that of the board of equalization, and this court cannot impose its notion of value on either. These are fundamental principles in the law of taxation and cannot be waived aside to meet the exigencies of any particular case." (p. 636.)

In *Photo Play Corporation v. Board of Review*, 102 Kan. 356, 169 Pac. 1154, in discussing the question of judicial power, it was said:

"It is fundamental that courts cannot be required or permitted to exercise any power or function except those of a judicial nature. (*Auditor of State v.*

*A. T. & S. F. Railroad Co.,* 6 Kan. 500.) An aggrieved party may call on the court for judicial redress and not for the performance of a nonjudicial or administrative function." (p. 358.)

The same principle of law was applied in many cases involving public utility rates, and in the early case of *State, ex rel., v. Flannelly,* 96 Kan. 372, 382, 152 Pac. 22, it was held that rate making is a legislative function and the court should refrain from every appearance of exercising rate-making power. And in *Holton Creamery Co. v. Brown,* 141 Kan. 830, 833, 44 P. 2d 262, after quoting from the last above case stating the principle of noninterference by the judiciary in a legislative function, the court listed many decisions of this court upholding that principle.

We prefer to give to section 27 pertaining to appeals an interpretation that will sustain and not destroy it, and to hold that on appeal in such a case as is now before us the function of the district court is limited to determining whether the final order made by the tax commission operated unreasonably and arbitrarily in attributing to Kansas a percentage of total net income out of all appropriate proportion to the property located and business transacted within this state, and that on appeal the district court is without power to make an independent finding as to the amount of tax due or not due.

Giving consideration to the views herein expressed, it appears no return was made by the company that was approved by the commission, and concededly the order made by the commission was erroneous. But that situation did not establish the company had no tax liability. We recognize that perhaps we could take various figures from exhibits and evidence and arrive at the conclusion there was or was not a tax liability, but to do that would be to perform a duty laid upon the tax commission, and one that we are without authority to perform. Proceedings should be had before the tax commission in which a return is made by the company which the commission can approve, or a final order should there be made not inconsistent with the views herein expressed.

The appeal of the commission is therefore sustained and the matter remanded to the trial court with instructions to set aside its conclusions of law Nos. IV, V and VI, and that portion of its order enjoining the tax commission from taking steps to collect an income tax from the company for the year 1933, and to remand the matter to the tax commission for further action there in a manner not inconsistent with the views herein expressed.