No. 25,470.

The J. R. Watkins Company, *Appellant,* v. M. D. Waldo et al., *Appellees.*

SYLLABUS BY THE COURT.

1. CONTRACT—*Relation of Seller and Buyer Created.* A contract examined and held to create the relation of seller and buyer, and not that of principal and agent.

2. SAME—*Written Contract—Not Varied by Parol Testimony.* The obvious meaning of a written contract cannot be varied by the parol testimony of one of the parties.

3. SAME—*Finding of Trial Court Not Based Upon Substantial Evidence—Will Not Support a Judgment.* A finding of a trial court, which is not based upon any substantial evidence, is insufficient to support a judgment.

Appeal from McPherson district court; William G. Fairchild, judge. Opinion filed December 6, 1924. Reversed.

*James A. Cassler,* of McPherson, *M. B. Webber, J. M. George* and *M. J. Owen,* all of Winona, Minn., for the appellant.

*P. J. Galle, James L. Galle,* and *Frank O. Johnson,* all of McPherson, for appellees.

The opinion of the court was delivered by

HARVEY, J.: This is an action by a foreign corporation for a balance claimed to be due it from citizens of this state for the sale of merchandise under a contract. The defendants appeared specially, objected to the jurisdiction of the court, and moved to set aside the summons served upon them for the reason that plaintiff is a foreign corporation, doing business in this state within the meaning of R. S. 17-506, and had never made application for, nor received authority from, the ·charter board to do' business in this state. The court sustained this motion, and the plaintiff has appealed.

The contract between the parties, upon, which the action was based, and in accordance with which their business was conducted, is as follows:

"THIS AGREEMENT, Made at Winona, Minn., U. S. A., this 1st day of December, A. D. 1920, between The J. R. Watkins Company, a Minnesota corporation, hereinafter called the company, party of the first part, and Morgan D. Waldo, McPherson, Kan., party of the second part,

"*Witnesseth,* That for and in consideration of the promises and agreements hereinafter contained, to be kept and performed by the party of the second part, the company promises and agrees to sell and deliver to the party of the second part free on board cars at Winona, Minn., or at its option at any of its regular places of shipment, any and all goods and other articles manufactured or sold, or which may hereafter be manufactured or sold by it, unless prevented by fire, insurrection, invasion, strikes, or other cause, at the usual customary wholesale prices, as the party of the second part· may reasonably require for sale from time to time, from the date hereof, until the first day of March, 1922, as hereinafter provided, in the following described territory, except the incorporated municipalities therein located, to wit:

In the state of Kansas, in McPherson county, except the north tier of townships, the townships of Battle Hill, Delmore and New Gottland, in the second tier from the north and the north half of the townships of McPherson, Empire' and Canton, in the third tier from the north, and in consideration thereof the party of the second part promises and agrees as soon as practicable after said goods and other articles are received, to make a thorough and personal canvass of said territory at least four times a year, at his own cost and expense, and to provide a proper outfit therefore, and to sell said goods or so much thereof as possible, and at all times during said term said party of the second part agrees to keep a complete record of all goods disposed of by him, and on hand, to make to said company complete regular weekly written reports of the sale and collections, which reports, however, or any of them, may be waived by said company, and also to report the goods on hand and outstanding accounts when requested by said company so to do.

"And the party of the second part promises and agrees to pay to said

company at Winona, Minn., the wholesale prices aforesaid for the goods and other articles sold to him from time to time, as herein provided, and the prepaid freight and express thereon, if any, during said term, at the time and in the manner and in accordance with the provisions of the weekly report blanks of said company to be furnished to the party of the second part, and at the termination of this agreement to pay the whole amount therefore then remaining unpaid; or in cash, with the understanding that said Company will allow a discount of three per cent from said wholesale prices on all goods paid for on or before the 15th of each month, provided, full payment for all goods furnished prior to the first of the month next preceding such payment, and the indebtedness now due, shall then have been made; but such payments, or any of them, may be waived or extended by the said company without notice to the sureties hereon, and without prejudice to the rights or interests of said company, and if the party of the second part shall not pay cash for said goods and other articles so sold and delivered to him, and the payment at the time and in the manner and in accordance with said weekly report blanks, as aforesaid, are insufficient to pay therefore, or if the party of the second part shall fail to pay on the indebtedness now due, from time to time during said term, amounts satisfactory to said company, said company may in its discretion, thereafter either limit the sale herein agreed to be made, or discontinue the same until such indebtedness is paid or reduced as said company may require; and at the termination of this agreement the party of the second part agrees to return by prepaid freight to said company at Winona, Minn., or other point at which the same were delivered, in as good condition as when delivered to him, f. o. b. cars, all of the said goods undisposed of by him, and the company agrees to receive such goods if the same are in such condition when received at Winona, Minn., or other point at which they were delivered to the party of the second part, f. o. b. cars, and pay or credit the party of the second part therefore, at the same prices at which the same were sold and delivered; and if not in such condition when so received the company shall make a reasonable charge for putting them in such condition, if that can reasonably be done, and deduct such charge from the amount of the goods so returned, and pay or credit the party of the second part with the balance thereof, but no goods left by said party with his customers, on time or trial, not paid for by them, or by them partially used and then returned to him, shall be returned to said company, or be paid for by it, or credited to the account of said second party.

"And it is mutually agreed between the parties hereto that the party of the second part shall pay all transportation charges on goods he so purchases and all expenses and obligations incurred in connection with the canvass and sale of said goods, and shall have no power or authority to make any statement or representation or incur any debt, obligation or liability of any kind whatsoever, in the name of, or for, or on account of said company, and that said company shall in no way contribute to the expense of, nor share in the profits or losses on the sales of said goods by said second party; nor have any interest in the accounts due for goods sold by the said second party and no printed, advertising or other matter of said company, sent to or distributed by said second party shall be construed to change or modify the terms of this agreement;

and that this is the complete, entire and only agreement between the said parties, and that it shall not be varied, changed or modified in any respect except in writing executed by the parties hereto. The party of the second part hereby promises to pay said company at Winona, Minn., from time to time during the term of this agreement, in amounts satisfactory to said company, the indebtedness now due for goods and other articles heretofore sold and delivered to him as vendee, and at the expiration or termination of this agreement, agrees to pay any balance thereof then remaining unpaid, payment of which indebtedness is hereby so extended.

"The parties hereto, for the purpose of settling and determining the amount now due, hereby mutually agree that the said indebtedness now due said company is the sum of nineteen hundred eighty-seven and ninety-four one hundredths dollars, which sum the second party agrees to pay, and payment of which is extended as above provided. And it is further mutually agreed that either of the parties hereto may terminate this agreement at any time by giving the other party notice thereof in writing by mail and any indebtedness then owing from said second party to said company shall thereupon be and become immediately due and payable.

"In witness whereof, the party of the first part has caused these presents to be executed in its corporate name by its proper officer, and the said party of the second part has hereunto set his hand the day and year first above written."

This was signed by plaintiff and by the defendant M. D. Waldo, and the payment of the amount then owing and of any additional sum that might become due on account of sales of merchandise by plaintiff to Waldo under the contract was guaranteed in writing by the defendants L. B. Register, O. F. Wiard and Anna Waller.

Upon the hearing of the motion Waldo was called as a witness for defendants and was asked: "Q. In what capacity did you sell that medicine; as agent or otherwise? A. As agent." He further testified that the contract above set out was the only contract or agreement he had with plaintiff, and that all of his business with plaintiff had been transacted under and by virtue of that contract. In deciding the motions the court found (a) that plaintiff is a foreign corporation, (b) that it had not been authorized to do business in Kansas, and (c) that it is doing business in this state within the meaning of R. S. 17-506, which reads:

"Every corporation organized under the laws of another state, territory or foreign country that has an office or place of business within this state, or a distributing point herein, or that delivers its wares or products to resident agents for sale, delivery, or distribution, shall be held to be doing business in this state within the meaning of this act."

On behalf of appellant it is argued that the contract between plaintiff and Waldo is a contract for the sale of merchandise manu-

factured by or for it, f. o. b. cars at Winona, Minn., or other place
of manufacture outside of the state of Kansas; that the relation
between the parties established by the contract was that of vendor
and vendee, and that all the business it transacted with Waldo was
interstate commerce. On behalf of appellee it is contended that the
contract between plaintiff and Waldo created the relation of prin-
cipal and agent, that Waldo was the agent of plaintiff for the sale
of merchandise manufactured by or for it, and since Waldo was a
resident of this state and sold the merchandise in this state, the
plaintiff was doing business in this state, within the meaning of R. S.
17-506; and further contend that the trial court upon parol evidence
made a finding that plaintiff by having a resident agent was doing
business in this state within the meaning of the statute, and under a
long line of decisions of this court such a finding will not be set
aside on appeal.

Let us first examine the contract between the parties in respect
to the contentions of appellant. Though perhaps not controlling on
the question, it will be noted that wherever the contract speaks
specifically of the relations between the parties it denominates such
relation as that of vendor and vendee, or words of equivalent mean-
ing; nowhere in the contract is the relation of principal and agent,
or of partnership, specifically mentioned as being created or as
existing. By the contract appellant "agrees to sell" and deliver to
Waldo, f. o. b. cars "at Winona" its merchandise "at the usual
customary wholesale prices" as Waldo might order for resale in a
prescribed territory. Waldo agreed to canvass such territory and
to sell so much of the merchandise as possible, and make weekly
reports to appellant. He further agreed to pay appellant the whole-
sale price of the merchandise so sold to him from time to time, to
pay the freight or express on the merchandise from the place of
shipment, and at the termination of the contract to pay any sum
remaining unpaid. In the event Waldo had merchandise on hand,
which he had not sold at the termination of the contract, Waldo
agreed to return the same to appellant, who agreed to receive it and
pay Waldo for the same at wholesale price in cash, or by crediting
his account.

Appellant had no share in the profits or losses of merchandise sold
by Waldo, had nothing to say as to whether Waldo sold for cash or
on credit, and if he did sell on credit appellant had no title to or
interest in the accounts or notes for such sales. So an examination
of the contract between the parties forces us to the conclusion that

the relation established between the parties by virtue of it is that of seller and buyer, and not that of principal and agent.

The conclusion we have reached is in accord with the following decisions of courts of other states construing contracts identical with the one here considered: *J. R. Watkins Med. Co. v. Hogue,* 138 Ark. 105; *Hogg et al. v. J. R. Watkins Medical Co.,* 228 S. W. 730 [Ark.]; *Medical Co. v. Holloway,* 182 Mo. App. 140; *Watkins Medical Co. v. Hunt,* 104 Neb. 266; *J. R. Watkins Medical Co. v. Coombes,* 66 Okla. 126.

And the following decisions construing contracts of other corporations similar to the one here considered: *W. T. Rawleigh Co. v. Van Duyn,* 32 Idaho, 767; *The W. T. Rawleigh Co. v. Trerice,* 224 Mich. 420; *Saginaw Medicine Co. v. Dykes, et al.,* 210 Mo. App. 399; *McConnon & Co. v. Haskins,* 180 S. W. 21 [Mo.]; *Dr. Koch Vegetable Tea Co. v. Shumann et al.,* 42 Okla. 60; *Dr. Koch Vegetable Tea Co. v. Malone,* 163 S. W. 662 [Texas]. See also, *Hessig v. Sly,* 83 Kan. 60, 109 Pac. 770.

Appellees call our attention to *Brewing Association v. Nipp,* 6 Kan. App. 731, but there the contract provided for the sale f. o. b. Wichita, and it was held to be a sale within this state. There is nothing in this case contrary to the conclusion above reached.

Passing now to the argument of appellees: That Waldo testified that he was representing the appellant as agent and that the court made a finding, based upon the testimony of Waldo, to the effect that appellant was doing business through an agent in this state, which finding is binding upon this court. Waldo also testified that he had no contract or agreement with appellant other than the written contract above set out, and that all the business he had with appellant was in accordance with that contract; hence, his testimony that he represented appellant in the capacity of an agent is a mere conclusion. He could not vary the terms of his written contract by his parol testimony.

It is true this court has held in many cases that a finding of a trial court based upon conflicting evidence, or having some substantial evidence to support it, is binding on this court and will not be disturbed. But it is also true that this court has held in many cases that a finding of a trial court which is not based upon any substantial evidence will not support a judgment based thereon. That is the situation here. It necessarily follows that the judgment of the trial court must be reversed with directions to overrule the motions of defendants.