**MERMIS et al. v. WALDO et al.**

**No. 1529.**

Circuit Court of Appeals, Tenth Circuit.

July 14, 1937.

C. A. Magaw, of Omaha, Neb. (E. J. Malone, of Hays, Kan., and Thomas F. Doran, Clayton E. Kline, and M. F. Cosgrove, all of Topeka, Kan., on the brief), for appellant receiver.

J. C. Ruppenthal, of Russell, Kan., for appellant Ross.

John H. Hunt, of Topeka, Kan. (W. R. Griffin, of Ellis, Kan., and John L. Hunt, of Topeka, Kan., on the brief), for appellees.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

BRATTON, Circuit Judge.

The First National Bank of Ellis, Kan., became insolvent and suspended business in March, 1933. The Comptroller of the Currency appointed a receiver and later made an assessment against the shareholders of stock of 100 per cent. of the par value thereof. According to the records of the bank. L. C. Ross and E. C. Waldo each owned 89 shares of such stock. The receiver instituted separate suits against them to enforce such assessment, alleging in each instance ownership of 89 shares. Waldo answered. Ross entered his ap-

pearance and later died. The action was revived in the name of his wife as executrix and heir, and she answered. It appeared from the answers that Ross and Waldo had been associated together as partners for many years. The two causes were consolidated and the receiver was authorized to join E. C. Waldo, as surviving partner of Ross and Waldo, as a party defendant.

The receiver filed an amended and supplemental petition in the consolidated action in which it was alleged that the partnership owed the bank about $2,200 on promissory notes at the suspension of business; that the partnership owned 178 shares of capital stock of the bank which was carried on the books of the bank in the individual names of the partners, 89 shares being in the name of each; that the partnership purchased and paid for most of such stock; that in May, 1934, L. C. Ross and E. C. Waldo, as partners, assigned and delivered to the receiver certain promissory notes, certain real estate mortgages, an oil and gas lease, and two policies of life insurance each for $10,000—one on the life of Ross payable to Waldo, and the other on the life of Waldo payable to Ross—all to secure the indebtedness of the partnership and that of the individual partners; that he collected $1,800.15 on the notes; that Ross died and the proceeds of the policy insuring his life were delivered to the receiver; that upon receipt of such proceeds, he applied them (1) to the balance due on the notes of the partnership, and (2) one-half to the assessment against the stock in the name of Ross and one-half to the assessment against that in the name of Waldo; and that after making such application there was a balance due upon the assessment against the shares of stock in the sum of $8,220.74. Judgment was prayed for that amount with interest.

Waldo answered that he and Ross owned the stock individually; that the policy insuring the life of Ross was assigned as security for the debt of the partnership to the bank and for the assessment against the stock owned by Waldo; that the balance of the proceeds, if any, was to be returned to him; that after paying the obligation of the partnership, the receiver wrongfully applied the remainder equally to the assessment against the stock owned by Waldo and to that owned by Ross; and that its proper application would have extinguished in full the debt of the partnership and the assessment against the stock of Waldo.

The executrix answered that the 178 shares belonged to the partnership; that the assessment should have been against L. C. Ross and E. C. Waldo, partners doing business under the firm name, for the full amount of $17,800; that the two policies were obtained and maintained for the benefit of the partnership; that they were assigned with the agreement of both partners and the receiver that each and both should be security for the indebtedness of the partnership and of the members thereof; and that the receiver had applied the proceeds in accordance with such agreement.

A jury having been waived, the consolidated cause was tried to the court. The court found that the shares of stock belonged to Ross and Waldo individually, each owning 89 shares; that the policy insuring the life of Ross was assigned as security for the indebtedness of the partnership and for the liability of Waldo upon the assessment against his stock; and that when applied in that manner, the proceeds were sufficient in amount to extinguish in full such indebtedness and such liability. Recovery against Waldo individually and against him as surviving partner was denied. The receiver was directed to pay him the proceeds of the policy in excess of the indebtedness of the partnership and the amount of the assessment on the stock in his name; and the receiver was further required to account for the notes, bills, and other securities delivered to him and to return all of them then in hand. The receiver and the executrix appealed.

 The contention urged for reversal is the lack of substantial evidence to support the finding that Ross and Waldo owned the stock individually; that the policy insuring the life of Ross was assigned as security for the indebtedness of the partnership and for the assessment against the stock in the name of Waldo; and that after extinguishing the debt of the partnership, the receiver wrongfully applied the remainder pro rata on all of the stock. This being a case at law in which trial by jury was waived, the findings are equivalent to a verdict and will not be overturned on appeal if there is substantial evidence to support them. But, whether they are supported by substantial evidence is a question of law subject to re-

view. White v. United States (C.C.A.) 48 F.(2d) 178; Muir v. Ferguson (C.C.A.) 53 F.(2d) 846; Aycock v. Bradbury (C. C.A.) 77 F.(2d) 14; Nielsen v. General American Life Ins. Co. (C.C.A.) 89 F.(2d) 90.

Turning to the evidence, the receiver testified that after several conferences were held it was agreed that certain notes and bills receivable of the partnership, some mortgages, and the two life insurance policies should be delivered to him as security; that the proceeds should be applied on the notes of the partnership and then pro rata on the 178 shares of stock; that at the time Waldo indorsed the check in payment of the policy, he stated that it should be applied in that manner; that such application was made and the receiver gave Waldo receipts so showing; that the receiver subsequently furnished monthly statements showing collections made and the application of the funds; and that Waldo never made any complaint about such application of the proceeds of the insurance policy until he filed his answer in the case. A national bank examiner, engaged in examining banks in receivership, testified that he was present at one of the conferences at which it was agreed that certain securities belonging to the partnership and the two life insurance policies would be delivered to the receiver as security for the indebtedness of the partnership and that of the members; and that the receiver should make application of the proceeds as he saw fit. The executrix testified that she attended several conferences, her husband being critically ill at the time; that it was agreed that the securities and the policies should be delivered to the receiver and that the proceeds should be applied (1) to payment of the notes of the firm, and (2) to payment of the liability on the assessment against the stock; and that she had a conversation with Waldo in which he stated that the receiver was to apply the proceeds to payment of the notes of the firm and then divide the remainder equally between the stock liability of the partners.

The undisputed evidence showed that some of the stock was acquired with money belonging to the partnership. The books and records of the partnership contain many entries concerning the stock. The firm furnished the bank a financial statement for the purpose of securing credit, made as of January 1, 1933, and signed by Waldo. It listed the stock as an asset of the par value of $17,800. A similar statement was furnished the receiver dated April 16, 1934, and signed by Waldo, in which stock was listed at the value of $17,778.50. Waldo furnished the bank an individual financial statement, made as of January, 1, 1933. It did not contain any stock of the bank as an asset, but did include one-half interest in the firm; and under the heading of business results there was a reference to the Ross and Waldo statement. He made a similar statement as of January 1, 1934. In like manner, it failed to list any stock in the bank, but made reference to the statement of the firm. Ross and wife, and Waldo and wife executed a mortgage in favor of the receiver, dated May 19, 1934, covering certain real estate belonging to the partnership. It recited that the "grant is intended as a mortgage to secure the payment of the sum of Seventeen Thousand Eight Hundred ($17,800.00) represented by 178 shares of stock in the defunct First National Bank of Ellis, Kansas, with interest at 6% per annum from December 9, 1933, until paid, said stock carried in the individual names of grantors, but carried as partnership assets in the firm of Ross & Waldo." The assignment of the oil and gas lease, dated May 24, 1934, signed by Ross and wife, and Waldo and wife, recited that it was given for the purpose of securing payment of $21,188 with interest. Waldo, as surviving and liquidating partner, filed an audit in the probate court which included the assessment as a liability of $17,800. He also filed so-called trial balance sheets which disclosed the original liability of $17,800 and a credit of $10,000 upon it. The executrix listed the 178 shares of stock at $8,900 in a report filed in the probate court.

Waldo indorsed the check in payment of the policy. The receiver immediately gave him four receipts. One recited full settlement of the indebtedness of the partnership; one recited the application of $3,959.61 on the stock assessment of Waldo; one recited the application of a like amount on the stock assessment of Ross; and the remaining one recited that $1,000 would be credited upon further notice. The receiver made numerous reports between July 9, 1934, and December 24, 1935, of collections made on notes and on the insurance policy. They showed the date, amount, and source of money collected

and the application made of it. Copies were furnished Waldo and he did not make any complaint concerning the application of the insurance money until the filing of his answer.

Waldo testified that the stock belonged to him individually; that he had paid certain previous assessments against it; and that the insurance policy in question was assigned to secure the debt of the partnership and the assessment against the stock issued in his name. He admitted the making of the financial reports, his explanation being that the bookkeeper made them from the books and that they went through as a matter of form; he admitted the filing of the audit and the trial balance sheets in the probate court; and he admitted that the report of the executrix was prepared in part from information which he furnished. He did not expressly deny the testimony of the receiver, that of the bank examiner or that of the executrix. His testimony concerning ownership of the stock and the purpose for which the policy was pledged stands alone, except the naked fact that the certificates were issued in the respective names of the individuals. Such testimony is overwhelmingly refuted by the books of the partnership; by the financial statements which he made for the partnership and those which he made on his own behalf, some of which were verified; by the audit and trial balance sheets which he filed in the probate court; by the report of the executrix made in part upon information which he furnished; by recitals contained in the mortgage; by a recital contained in the assignment of the oil and gas lease; by his failure to complain when the receipts and reports were furnished him; by the testimony of the receiver, that of the bank examiner, and that of the executrix; and by his own statement made in the course of his testimony that the policy was assigned as security for the debts of the partnership and for the liability of the individuals on their assessments. We fail to find any evidence of a substantial character to support the challenged findings of the trial court.

Cases abound enunciating the accepted doctrine that a judgment cannot be upheld on appeal if the essential findings are unsustained by substantial evidence. Gromm v. Fybush, 58 Colo. 145, 144 P. 551; Balkema v. Grolimund, 92 Wash. 326, 159 P. 127; Tuttle v. Pacific Mut. Life Ins.

Co., 58 Mont. 121, 190 P. 993, 16 A.L.R. 601; J. R. Watkins Co. v. Waldo, 117 Kan. 250, 230 P. 1051; Cook v. Bedford, 42 Idaho, 300, 245 P. 73; Smith v. State Industrial Accident Commission, 144 Or. 480, 23 P.(2d) 904, 25 P.(2d) 1119; Spain v. Griffith, 42 Ariz. 304, 25 P.(2d) 551; Kansas, O. & G. Ry. Co. v. Smith, 168 Okl. 190, 32 P.(2d) 302; Henry Wrape Co. v. Cox, 122 Ark. 445, 183 S.W. 955; First Presbyterian Church v. Dennis, 178 Iowa, 1352, 161 N.W. 183, L.R.A.1917C, 1005; Davis v. Aetna Life Ins. Co., 128 Neb. 154, 258 N.W. 58; Arpas v. Mishawaka Rubber & Woolen Co. (Ind.App.) 199 N.E. 167; Howe v. Watkins Bros., 107 Conn. 640, 142 A. 69.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.