No. 47,050

AMOCO PRODUCTION COMPANY, Formerly PAN AMERICAN PETROLEUM CORPORATION, *Appellant,* v. HAROLD A. ARMOLD, Director of Taxation for the State of Kansas, [as successor to JAMES T. McDONALD, Director of Revenue for the State of Kansas], *Appellee.*

(518 P. 2d 453)

*Ellis D. Bever* and *William Cobb*, both of Wichita, argued the cause, and *William E. Jetter*, of Chicago, Illinois, was with them on the brief for the appellant.

*O. F. Baldwin*, of Topeka, argued the cause, and *William L. Harris, Jr.*, of Topeka, was with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: This litigation stems from a requirement by the Director of Taxation that appellant, pursuant to provisions of the Uniform Division of Income for Tax Purposes Act (K. S. A. and K. S. A. 1973 Supp. 79-3271, *et seq.*) employ the "separate accounting" method rather than allocating and apportioning its multistate net income under the so-called "three-factor" formula method (K. S. A. 79-3279 to 79-3287, incl.) for the taxable years 1968 and 1969. The "separate accounting" method is sometimes referred to as the "direct" or "segregated" method of accounting. For convenience and brevity, appellant will hereafter be referred to as Amoco; appellee as Director; the Kansas Board of Tax Appeals as the Board; The Uniform Division of Income for Tax Purposes Act as the Uniform Act; and the "three-factor" formula apportionment method as the formula. The Director's assessment made on the "separate accounting" method was sustained by the Board and the order of the Board was affirmed by the trial court. This appeal ensued.

On appeal Amoco contends the Board and the Director failed to recognize that the Uniform Act changed the general rule for allocating and apportioning business income of a multistate business from the former rule generally requiring "separate accounting" to one requiring use of the "three-factor" formula prescribed by 79-3279 of the Uniform Act. Amoco further asserts that in this regard the trial court, in affirming the Board's order, committed reversible error in failing to properly interpret and apply the Uni-

form Act. Amoco further contends that the evidence does not support the Board's conclusion that "separate accounting" fairly represents the extent of its business activity in Kansas; and that the Board's order is arbitrary and capricious because it is based upon an invalid procedural rule and a legal standard for measuring business activities within the state which had been repealed by the adoption of the Uniform Act in 1963. Amoco also claims the trial court erred in determining that the nature of Amoco's business precluded it from utilizing the formula method in allocating its business income.

Amoco asks that the judgment of the trial court be reversed and the case remanded to the Director for redetermination of its Kansas income tax liability in accordance with apportionment provisions of the Uniform Act.

Amoco is a Delaware corporation with its principal office in Tulsa, Oklahoma. It was authorized to do business in Kansas prior to the effective date of the Kansas income tax in 1933. Its principal business is the production, processing and sale of oil, gas and related products. It is the wholly owned domestic subsidiary of Standard Oil Company of Indiana and provides the principal source of crude oil for its parent and affiliated corporations. During the taxable years in question, Amoco was engaged in exploring for and producing oil and gas in twenty-one states. Its general operating office is located in Tulsa, Oklahoma. During the taxable years, Amoco's activities in Kansas consisted of production, exploration, purchasing oil and gas from other producers and reselling such products for use within and without the state. It also owned interests in three gas processing plants located in Kansas. An exhibit, reproduced in the record, reflects Federal and Kansas taxable income or losses during the years 1933 through 1969. It discloses that during the early years Amoco's Kansas operations resulted in losses.

Since 1933 Amoco has employed "separate" or "segregated" accounting in rendering its income tax returns, although on several occasions it attempted, unsuccessfully, to employ the formula method. In 1959 Amoco filed its return and reported its income on the formula method authorized by G. S. 1949, 79-3218, which was in effect at the time. The Director rejected the filing and required Amoco to compute its income tax by use of the "direct" or "separate" accounting method, also authorized by G. S. 1949, 79-3217. On appeal the Director's requirement was sustained by

the Board of Tax Appeals and thereafter by the district court of Seward County. G. S. 1949, 79-3217 and G. S. 1961 Supp. 79-3218 were repealed in 1963 (L. 1963, Ch. 485, Sec. 24) by the adoption of the Uniform Act. Amoco filed its return for 1963 on the "three-factor" formula then provided by K. S. A. 79-3271, *et seq*. The return was rejected and Amoco was again required to report its income by the "separate accounting" method on the grounds that "separate accounting" clearly reflected its Kansas business activities; and on the further ground that Amoco had not obtained the Director's permission to change its method of accounting. Amoco complied and continued to compute its Kansas income tax on "separate accounting" through 1967, although it claims the returns for those years were filed under duress. For the years in question —1968 and 1969—returns were made on the formula method, but at the request of the Director, Amoco also filed unsigned returns based upon "separate accounting." On these unsigned "separate accounting" returns the deficiencies in dispute were assessed. There is no dispute concerning the accuracy of figures in either the "separate accounting" or formula method returns. Formula apportionment allocated a composite fractional 2.78 percent of Amoco's total net taxable income to Kansas for the year 1968 and 2.71 percent for the year 1969; whereas "separate accounting" attributed to Kansas approximately 23 percent of total net income for each of the two years.

The record on appeal discloses that the evidence before the trial court consisted generally of the transcript of proceedings before the Board, its order therein, the testimony of three witnesses called by Amoco and documentary evidence consisting of tax returns reflecting the use of both methods for the years in question, various statistical schedules and correspondence between Amoco and officials of the Director's office.

The Uniform Act was approved by the National Conference of Commissioners on Uniform State Laws and by the House of Delegates of the American Bar Association in 1957 (Vol. 7 Uniform Laws Annotated, p. 365). Professor William J. Pierce, of the University of Michigan Law School, a member of the National Conference, was the draftsman. In a treatise analyzing the provisions of the Act appearing in Vol. 35, "TAXES" The Tax Magazine (October 1957), commencing at page 747, Professor Pierce states that its basic purpose should be the simplification of computing state taxes and that, "the Act, if adopted in every state having a net income tax or

a tax measured by net income, would assure that 100 percent of income, and no more or no less would be taxed." The Uniform Act was first adopted by Alaska in 1960, followed by Arkansas in 1961, and Kansas in 1963. At the time this action was tried it had been adopted in substantially its original form in twenty-three states.

K. S. A. 79-3272 of the Uniform Act mandates that any taxpayer (with certain exceptions not pertinent herein) having income from business activity taxable both within and without this state shall allocate and apportion his net income as provided in the Act.

The "three-factor" formula is set out in K. S. A. 79-3279 which reads:

"All business income shall be apportioned to this state by multiplying the income by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is three."

The three factors are defined in the following section of the Act. K. S. A. 79-3280 defines the property factor in this fashion:

"The property factor is a fraction, the numerator of which is the average value of the taxpayer's real and tangible personal property owned or rented and used in this state during the tax period and the denominator of which is the average value of all the taxpayer's real and tangible personal property owned or rented and used during the tax period."

K. S. A. 79-3281 and 79-3283 prescribe rules for the valuation of owned and rented property and the averaging of the values thereof.

The "payroll factor" is defined in K. S. A. 79-3283:

"The payroll factor is a fraction, the numerator of which is the total amount paid in this state during the tax period by the taxpayer for compensation, and the denominator of which is the total compensation paid everywhere during the tax period."

The "sale factor" is defined in K. S. A. 79-3285:

"The sales factor is a fraction, the numerator of which is the total sales of the taxpayer in this state during the tax period, and the denominator of which is the total sales of the taxpayer everywhere during the tax period."

The provisions of the Uniform Act most critical to this litigation appear in K. S. A. 1973 Supp. 79-3288 which read in pertinent part:

"If the allocation and apportionment provisions of this act do not fairly represent the extent of the taxpayer's business activity in this state, the taxpayer may petition for or the secretary of revenue may require, in respect to all or any part of the taxpayer's business activity, if reasonable:

"(a) Separate accounting;

"(b) the exclusion of any one or more of the factors;

"(c) the inclusion of one or more additional factors which will fairly represent the taxpayer's business activity in this state; or

"( *d* ) the employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income; or . . ."

This section of the Act is frequently referred to as the "relief" provision (Vol. 1972 Utah Law Review, p. 607; and Vol. 15 University of California Los Angeles Law Review [1967], [Keesling and Warren], Corporate Taxation, pp. 156. *171* ).

After requiring Amoco to file its returns based on "separate accounting" the Director held a hearing on the matter on July 15, 1971. On August 2 the Director filed an assessment for the years in question based on "separate accounting" stating that Amoco had reported its income in previous years on "separate accounting" and did not petition the Director for permission to change. The Director made an affirmative finding that "separate accounting," as provided in 79-3288, fairly represented the extent of taxpayer's business activities in the state, but he made no negative findings concerning formula apportionment nor did he specify reasons why it did not fairly represent business activities in the state.

In its order sustaining the Director's requirement of "separate accounting," the Board found in pertinent part:

"6. That the appellant operated in 34 states in 1968 and in 35 states in 1969, and that they used the direct method of accounting in reporting their income to the majority of said states. In addition, the appellant filed its income tax return in the state of its principal business activity namely Oklahoma, upon the direct or segregated method of accounting.

"7. That the appellant can and has for many years determined its income tax liability by direct accounting according to state lines.

"8. That the appellant has never contended that the direct accounting method has caused it to pay tax on more than 100% of its income or that it does not clearly reflect its business activity within the State of Kansas.

"9. That contrary to the figures shown in the appellants ( *sic* ) statement of facts, the figures revealed on the appellants ( *sic* ) amended tax returns indicate that the appellant derived approximately 24% of its total taxable income in the State of Kansas in each of the years 1968 and 1969."

In finding No. 10 the Board delineated the issues to be considered in this manner:

"10. . . .

"a. Does K. S. A. 79-3288 authorize the Kansas Director of Revenue to require direct or separate accounting if such method clearly reflects the appellants ( *sic* ) Kansas income from business transacted or derived from sources within the State of Kansas?

"b. If the Director of Revenue of the State of Kansas orders a taxpayer to use the separate or direct accounting method in computing its Kansas taxable income and said accounting method clearly reflects the income from business

transactions and property located in Kansas, is such an order unreasonable under the provisions of K. S. A. 79-3288?

"c. May a taxpayer ignore the Director of Revenue's order and file his return in any way he wishes?"

The Board's conclusions pertinent to our discussion are as follows: "11. . . .

. . . . . . . . . . . . . .

"b. That under the provisions of K. S. A. 79-32,138 (e) the appellant is required to compute its Kansas taxable income according to the provisions of K. S. A. 79-3271 through K. S. A. 79-3293. In the instant case the Director of Revenue has required the appellant to compute its Kansas Income Tax according to K. S. A. 79-3288, a statute included in the Uniform Division of Income for Income Tax Purposes Act, K. S. A. 79-3271 through 79-3293.

"c. That Kansas Administrative Regulation 92-12-53 requires a taxpayer to obtain permission from the Director of Revenue of the State of Kansas to change its accounting method. The appellant in the instant case has failed to comply with this administrative regulation.

"d. That the Director of Revenue's requirement for direct accounting as provided in K. S. A. 79-3288 is reasonable . as the direct accounting method clearly reflects the appellants (sic) business activities in the State of Kansas. The appellants (sic) stipulation and payment of its 1966 Kansas Income Tax assessed under the direct accounting method would indicate that the appellant agreed that the direct accounting method was correct and reasonable.

"e. That the arbitrary filing of income tax returns using the three factor formula in direct violation of the order of the Director of Revenue of the State of Kansas to use the separate accounting method cannot be considered a petition to change accounting methods as required by Section 92-12-53 of the Kansas Administrative Regulations.

"f. That the requirement of separate accounting as to this appellant by the Kansas Director of Revenue meets the statutory requirements of reasonableness because by the appellants (sic) own figures it grossed $66,509,274.62 in the State of Kansas in the year 1968 and after deducting Kansas expenses and deductions had a net income of $10,007,176.31 from business transacted and property owned in Kansas. The total net income for federal purposes for 1968 amounted to $43,976,437.40. In 1969 the appellants (sic) gross income from business transacted and property earned in Kansas amounted to $71,251,138.62 and after deducting its Kansas expenses and deductions had a net income of $10,108,945.00. The total taxable income of the taxpayer for Federal Income Tax purposes in 1969 amounted to $44,169,981.26. The Director of Revenue of the State of Kansas allowed the Federal Income Tax deduction in both years and assessed the tax on the appellants (sic) taxable income at the rate of 4½% for both years."

It is evident from the findings and conclusions quoted above that the Board based its ruling essentially on two grounds. First, that Amoco was prevented from adopting formula apportionment for procedural reasons because it failed to comply with K. A. R. 92-

12-53 and, second, that the Director's requirement was reasonable because "separate accounting" reflected Amoco's income from Kansas business as shown in conclusion No. 11 (f).

We shall first direct our attention to K. A. R. 92-12-53 which gave rise to the procedural point at issue. The Director, under K. S. A. 79-3236 [now 1973 Supp.] of the Kansas Income Tax Act, is authorized to make rules and regulations not inconsistent with the provisions of the Act. K. A. R. 92-12-53 became effective January 1, 1968. It reads:

"Methods of determining income allocable to Kansas business. Corporations and nonresident individuals engaged in business within and without the state are taxable only on such income as is derived from business transacted and property located within the state. Two general methods of determining the income attributable to Kansas from business transacted within and without the state are provided. These methods are: (1) The segregated or separate accounting method and (2) the apportionment method. Once a method of separate accounting or apportionment is selected by the taxpayer and accepted or required by the director [secretary] of revenue a taxpayer may not change the method of direct accounting or apportionment without first securing the approval of the director [secretary] of revenue."

Amoco argued before the district court that the regulation was inconsistent with and not responsive to provisions of the Uniform Act. The trial court rejected the Director's contention that a taxpayer must petition for a change in apportionment by ruling in this manner:

"The contention that the taxpayer is required by the Department of Revenue pursuant to regulation 92-12-53 to petition for a change in accounting methods is met by the legislative mandate in UDITPA and is not pertinent to this action. . . ."

The Director did not cross-appeal from the trial court's ruling on this point, thus the merits of the procedural question are not before us. However, since the Director has reasserted his position on this point in his brief on appeal, and more importantly since we believe the regulation clearly evidences a misinterpretation of the Uniform Act, further consideration is necessary. The regulation (92-12-53) cannot stand for two reasons. First, although 92-12-53 was promulgated in 1968, five years after the adoption of the Uniform Act, it, like its predecessor (Regulation 94-4-85 contained in a pamphlet entitled "STATE OF KANSAS INCOME TAX LAWS AND REGULATIONS"), contemplates two general methods of equal stature for determining the income attributable to Kansas, i. e., one, "separate accounting" and two, formula apportionment. This

concept was consistent with the previous law (G. S. 1949, 79-3217), but it flies in the face of the mandate of 79-3279 of the Uniform Act which directs apportionment by the formula method subject only to the relief provisions of 79-3288. The clear import of the regulation is that the Director retained the same discretion granted to him under the prior law. Second, regulation 92-12-53 fingers "separate accounting" but ignores the other alternatives set forth in 79-3288; thus, apparently, limiting the Director's choice only to "separate accounting" if it appears formula allocation fails to fairly represent business activities within this state. Obviously, K. A. R. 92-12-53 was not drawn within the concept of the Uniform Act, particularly 79-3288. While a proper administrative regulation has the force and effect of law, if it goes beyond or conflicts with legislative authorization it is void. (*Willcott v. Murphy,* 204 Kan. 640, 465 P. 2d 959.)

Before considering further arguments of the parties on appeal, we should pause to examine further pertinent findings and conclusions of the trial court. In finding No. 5 the trial court summarized the results of allocation by the formula method in this fashion:

| *1968* | *KANSAS* | *TOTAL EVERYWHERE* | *KANSAS %* |
|---|---|---|---|
| Property Factor | $37,840,467 | $1,593,629,268 | 2.37 |
| Payroll | 1,398,146 | 87,044,927 | 1.61 |
| Gross Sales or Revenue | 65,889,921 | 1,513,878,871 | 4.35 |

Total Per Cent 8.33

Average Per Cent 2.78

Based upon similar figures for 1969, which are shown in detail on the tax return, the average per cent was ............................... 2.71"

The trial court further found that the schedule showing Amoco's taxable Kansas income for the years 1933 through 1969 reflects the high initial cost of acquisition and exploration peculiar to its business and that the trend of earnings reflects the practical difficulty of shifting from direct accounting to allocation under the formula method.

Based on its findings of fact the trial court concluded:

"Because of the unique characteristics of the oil and gas business this court concludes the director could and did reasonably conclude that taxpayers (*sic*) business activity was not fairly represented under the allocation method of UDITPA and hence required direct or separate accounting. It is difficult to perceive a clearer circumstance for application of the exception allowed the

Director under KSA 79-3288 than that of the oil and gas business with its requisite initial high investment and subsequent long term return of same. To interrupt this cycle with a change in accounting methods would indeed distort the reflection of business activity. The argument that separate accounting might result in taxation of more than 100% of taxpayers (*sic*) profit is not sustained by the evidence. This argument would require the use of off setting losses in other states and countries to be applied to Kansas income of the taxpayer and would not 'fairly represent the extent of the taxpayers (*sic*) business activity in this state.' To speculate that this would be met with production from other areas assumes that taxpayer will continue to do business in Kansas after depletion of its oil and gas fields which is not realistic."

While Amoco, because of its particular position, may be an exception under 79-3288, we cannot agree with the trial court's indication that it should be excepted simply because it is in the oil and gas business. In K. S. A. 79-3272 the legislature specifically excluded certain businesses from the Uniform Act, but oil and gas is not among those exempted.

On appeal Amoco vigorously argues that the Director and the Board have failed to recognize the decisive change in the law wrought by the adoption of the Uniform Act. Amoco points out that under the previous Act the test was whether the method of allocation "clearly reflects net income"; whereas under the Uniform Act the standard is whether the formula apportionment fairly represents the extent of a taxpayer's business activity in Kansas. Amoco simply says that the application of the formula method resulting in an apportionment of net income to Kansas of composite fractional averages of 2.78 percent for 1968 and 2.71 percent for 1969 fairly represents the extent of its activities in Kansas for those years. In support of its position, Amoco presented the testimony of its tax accountant, Earl E. Nelson, in the proceedings in the trial court. Mr. Nelson's testimony consisted primarily in explaining the formula method and identifying items of business activities which were employed to arrive at the fraction numerators for the "property," "payroll," and "sales" factors. As would be expected, considering this point in time with respect to Amoco's operations in Kansas, his testimony revealed that exploration costs, purchases of leases and royalties, and drilling were at a minimum. Mr. Nelson also testified as to a number of business factors which were not used in the formula. For example, purchases of leases and royalties amounted to only 0.04 percent of the company's total purchases in 1968 and 1.00 percent in 1969. Producing oil wells drilled in 1968 were six of a total of 286 or 2.10 percent, and in 1969 ten of a total of 392

or 2.55 percent. Sales of products produced in Kansas in 1968 amounted to 4.68 percent of the company's total and in 1969 4.70 percent. Of a total of 17,554 producing oil and gas wells, 132 or 7.46 percent were located in Kansas in 1968. There was a sharp decline in 1969 in the number of producing wells, both totally and in Kansas, dropping to 821 out of a total of 15,907 or 5.67 percent. As would be expected, Mr. Nelson concludes that the composite averages of 2.78 percent for 1968 and 2.71 percent for 1969 fairly represent the extent of Amoco's activities in Kansas for those years.

Amoco argues that the statistical and narrative information presented conclusively shows that the formula method does what was intended by the Uniform Act and claims that the Director has not submitted any evidence to the contrary. Amoco also directs our attention to the legislative statement of intent relating to the construction of the Uniform Act appearing in K. S. A. 79-3289:

"This act shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it."

Amoco says that this aspect of the Act has been recognized by this court in our opinion in *Western Natural Gas Co. v. McDonald,* 202 Kan. 98, 446 P. 2d 781, wherein we stated:

". . . This act was passed to provide for uniform allocation and apportionment of the state income taxes of any taxpayer doing a multistate business." (p. 99.)

In its notice of appeal to the district court, Amoco alleged that because of the decision in the *Western Natural Gas Co. v. McDonald* case it filed its returns for 1968 and 1969 on the formula apportionment provisions of the Uniform Act. Amoco reasserts this proposition herein. The *Western Natural Gas Co.* case dealt specifically with income from the sale of oil and gas leases in a liquidation sale of the entire assets of the company. The point decided was that such income constituted nonbusiness income from the sale of intangible personal property and was taxable at the commercial domicile of the corporation. Other than the reference to the Uniform Act quoted above, the decision has no bearing on the issues in the instant case.

Neither Mr. Nelson nor either of the other two witnesses called by Amoco attempted to explain or reconcile the wide differential in the apportionment of 2.71 or 2.78 percent of net income under the formula method and 24 percent (we calculate it to be nearer 23 percent) found by the Board to have been generated by Amoco's business in Kansas and to fairly represent the extent of its business activities.

The Director argues the Uniform Act was not intended as a loophole for taxpayers to avoid paying their fair share of the various states' income taxes by filing their returns to the states wherein they had losses on the "separate accounting" basis, and on the formula basis in the profit states. The Director points out that oil and gas companies have traditionally used "separate accounting" in reporting their income and that in fourteen (our examination of the schedule indicates fifteen) of the thirty-seven years, 1933-1969, Amoco paid no income taxes in Kansas. The Director says that Amoco has never contended, nor does it now, that because of "separate accounting" it has been taxed on more than 100 percent of its income. Because of the "relief" provision of 79-3288 the Director says he is not limited to the use of the formula method in all cases by the Uniform Act; and that the adoption of the Act did not change his duty to administer and enforce the tax laws. The Director also says the determination of the proper method of allocation of net income is still his duty and courts should not substitute their judgment for that of the administrative taxing authority, citing many of our decisions to that effect.

It is not our function on judicial review to argue the merits of the Uniform Act or to consider the wisdom of adopting it in this state. These matters were of legislative concern. Neither is it our function to interfere in matters of taxation which are administrative in character. In *Panhandle Eastern Pipe Line Co. v. Dwyer*, 207 Kan. 417, 485 P. 2d 149, we held:

"Matters of taxation, especially assessments, are administrative in their character and should remain free of judicial interference in the absence of fraud, corruption or conduct so oppressive, arbitrary or capricious as to amount to fraud." (Syl. ¶ 1.)

With respect to the proper method of allocating income of a multistate corporation we held in *Union Pac. Rld. Co. v. State Tax Comm.*, 145 Kan. 715, 68 P. 2d 1:

"The determination of proper methods of allocating income of such a corporation and of the amount of tax due from the corporation is an administrative duty cast upon the state tax commission and is to be performed by it." (Syl. ¶ 3.)

It is our function, however, to interpret a statute and to give it the effect intended by the legislature. (Vol. 5 Hatcher's Kansas Digest [Rev. Ed.], Statutes, § 90; and Vol. 9 West's Kansas Digest, Statutes § 176.) It is the duty of this court to make effective the legislative will as expressed in the clear intent of a statute (*State v. Beard,*

197 Kan. 275, 416 P. 2d 783; and *State, ex rel., v. Board of Regents,* 167 Kan. 587, 207 P. 2d 373), and where a statute is plain and unambiguous there is no room for judicial construction. (*Harris v. Shanahan,* 192 Kan. 183, 387 P. 2d 771.) While the administrative interpretation of a statute should be given consideration and weight when the statute is ambiguous and the intent of the legislature is not clear (*Graves v. Armstrong Creamery Co.,* 154 Kan. 365, 118 P. 2d 613; and *Russell v. Cogswell,* 151 Kan. 793, 101 P. 2d 361), it does not follow that this court will adhere to an administrative ruling when it is erroneous. (*Tillotson v. Abbott,* 205 Kan. 706, 472 P. 2d 240.) The interpretation of a statute involves a question of law and the final construction thereof rests within the courts. (2 Am. Jur. 2d, Administrative Law, § 656, p. 517; and 82 C. J. S., Statutes, § 359, p. 766.)

It is evident from the record presented that in this case the Board and the Director have misinterpreted the Uniform Act in several important particulars. First, as we have previously indicated, K. A. R. 92-12-53 under which the Director operated and which was recognized by the Board as authorized procedure in its conclusion No. 11 (*c*) is in direct conflict with the express mandate of 79-3279. Second, it is apparent from the manner in which it framed the issues in its finding No. 10 (*a*), (*b*) and (*c*), quoted above, that the Board considered the matter in the context of the prior law, rather than within the scope and direction of the Uniform Act. In finding No. 10 (*a*) the Board framed the question to be whether 79-3288, embodying the relief provisions, authorized the Director to require "direct" or "separate" accounting "if such method clearly reflects the appellant's Kansas income from business transacted or derived from sources within the State of Kansas." In other words, the Board attributed to the Director the same broad discretion to choose between the "separate" or formula method of apportionment that he possessed under the law prior to 1963, and that the determination was to be tested by the taxpayer's Kansas income rather than the extent of the taxpayer's business activities within the state. Likewise, the issue framed in finding No. 10 (*b*) is in terms of income rather than business activities. It is evident the Board failed to recognize the shift from the income test under the old law to the extent of business activities test under the new law and based its conclusion that the Director's order was reasonable on this misapprehension. A conclusion that an order is reasonable

where the order was conceived through erroneous procedure and based upon a misinterpretation of the Uniform Act cannot stand.

On the other hand, the substance of Amoco's argument, in support of its position, is simply that application of the "three-factor" formula conclusively establishes the extent of its business activities in Kansas and that, absent evidence other than its net income in Kansas, a departure from the prescribed apportionment is not permissible. In other words, Amoco says the 2.78 percent apportionment must be applied because the statute says so.

From the record presented, the majority of this court is unable to say an apportionment of 2.78 or 2.71 percent of Amoco's business income fairly represents the extent of its business activities in Kansas when those activities actually generated a grossly disproportionate 23 or 24 percent of its total net income. Moreover, as we have previously pointed out, the allocation and apportionment of the income of a multistate corporation is a subject for administrative expertise in accord with statutory direction. While the Uniform Act works significant changes in rules governing the allocation of income and administrative procedures pertaining thereto it does not affect the traditional concepts of judicial review long established in this jurisdiction. In connection with the review of proceedings dealing with allocation and apportionment for income tax purposes, we held in *Union Pac. Rld. Co. v. State Tax Comm.*, supra:

"In such a case, on appeal to the district court from the final determination of the state tax commission made in pursuance to G. S. 1935, 79-3226, the court may not substitute its judgment for that of the state tax commission and determine that a particular method of allocation shall be applied to reflect income justly allocable to this state, and thus make an independent finding as to the amount of tax due or not due.

"On such an appeal, the function of the district court is limited to determining whether the final order made by the state tax commission operated unreasonably and arbitrarily in attributing to this state a percentage of total net income out of all appropriate proportion to the property located and business transacted within this state." (Syl. ¶¶ 4, 5.)

See, also, *Webb Resources v. McCoy*, 194 Kan. 758, 401 P. 2d 879; and *Crawford Manufacturing Co. v. State Comm. of Revenue and Taxation*, 180 Kan. 352, 304 P. 2d 504.

In the instant case we are not substituting our judgment for that of the taxing authorities—we are setting aside an order that was based upon procedures and legal standards repealed by the adoption of the Uniform Act.

While several authors have articulated extensively on the subject

in the articles to which we have referred, the parties cite only two cases from other jurisdictions in which the relief provision of the Uniform Act was considered.

Amoco cites *Donald M. Drake Co. v. Dept. of Rev.*, 263 Or. 26, 500 P. 2d 1041, in which the Oregon court affirmed a tax court holding that, under the Uniform Act, apportionment of net income is the general rule and any system, including the segregated method is the exception. The Oregon court further held that the taxpayer or the Department of Revenue has the burden of proof whenever either seeks to invoke "separate accounting" under the relief provision of the Uniform Act. The thrust of the *Drake* opinion is that the Department of Revenue no longer had the broad discretion to require either the segregated or the apportionment method which it enjoyed prior to adoption of the Uniform Act; and that the use of any method other than apportionment should be exceptional. Amoco emphasizes a reference in the *Drake* opinion to an article by Professors Keesling and Warren entitled "CALIFORNIA'S UNIFORM DIVISION OF INCOME FOR TAX PURPOSES ACT" (Part 1) appearing in Vol. 15, University of California Los Angeles Law Review, p. 156 (1967), in which the authors urge narrow construction of the relief provision in order to secure uniformity among the states.

Although uniformity and equitable allocation are highly desirable and so recognized in 79-3289, we are not impressed with Amoco's argument in this regard as applied to the instant case. Tax accountant Nelson testified that twenty-one states in which Amoco was doing business during 1968 and 1969 had income tax; that only thirteen of the twenty-one had adopted the Uniform Act; and that in four of the thirteen Amoco was still filing under "separate accounting." The four states include Alaska, which was the first to adopt the Uniform Act (1961), and Kansas. Mr. Nelson also testified that Amoco filed under "separate accounting" in Oklahoma, the state of its commercial domicile. The uniformity sought had obviously not been obtained in 1968.

We agree generally with the Oregon court's interpretation of the Uniform Act and the purposes thereof which were endorsed in the *Drake* opinion; however, in view of the posture of the instant case as it comes before us, it is not within our prerogative nor that of the Director in the first instance to determine the method of allocation solely on the abstract proposition that uniformity compels narrow interpretation of the relief provision.

The Director cites *Kennecott Copper Corp. v. State Tax Com'n,* 27 Utah 2d 119, 493 P. 2d 632, in which the Supreme Court of Utah approved the tax commission's departure from the formula method, in particular the sales factor on the ground that, as applied, it did not fairly represent the extent of Kennecott's businesss activity within the state. In a dissenting opinion Chief Justice Callister, for the sake of uniformity, urges a narrow interpretation of the relief provision and by implication labels the majority decision a broad interpretation which would defeat the purpose of the Act, citing Vol. 15 University of California Los Angeles Law Review, Keesling and Warren (part 1), p. 156. The majority and dissenting opinions in *Kennecott* serve to emphasize the point of departure between broad and narrow interpretation of the relief provisions.

We are cognizant of the mandate of K. S. A. 79-3282 and of the forceful arguments for narrow interpretation in order to obtain uniformity in the difficult and complex area of multistate income apportionment. However, we also agree with the Director's assertion that the Uniform Act was not intended to afford a tax loophole for taxpayers to avoid paying their fair share of the various states income taxes by directly filing under "separate accounting" in states where it would be to the taxpayers' advantage and compelling acceptance of formula filing by reason of the Uniform Act in states wherein, because of the taxpayers' income position, such method would be advantageous.

While inferences may be drawn from the tax returns in evidence there is no direct evidence in this record that Amoco is deliberately picking and choosing between states in filing under one method or the other. If such be the case it is incumbent upon the Director to make a showing to that effect.

As indicated, because of the gross disparity between the results of formula apportionment on the one hand and "separate accounting" on the other, the majority of this court, on the basis of the record presented, is unable to conclude that application of the former clearly represents the business activities of Amoco in this state. To do so would clearly be to substitute our judgment for that of the Director and the Board. On the other hand, because of the obvious misinterpretation of the law evidenced by K. A. R. 92-12-53 and the standards delineated by the Board in its findings and conclusions, we are unable to say a determination is reasonable when made on these invalid premises.

Perhaps, we could take the various figures from the exhibits and testimony and arrive at the conclusion the formula method, in this particular case, does not fairly represent the extent of business activities in this state and that "separate accounting" or formula modified by one or more of the various modifications authorized by 79-3288 does operate to fairly represent business activities, but to do that would be to perform a duty laid upon the Director and one that we are without authority to perform.

In view of our interpretation of the pertinent provisions of the Uniform Act, the present posture of this case forecloses final disposition of the matter on this appeal. The matter must be remanded for a redetermination by the Director on the premise that formula is the prescribed method of apportionment and a determination otherwise is to be made on a standard of measurement that extent of business activities within the state is the test rather than solely business income. The Director's discretion afforded by the Uniform Act is not to choose between "separate accounting" and the formula method, as contemplated by K. A. R. 92-12-53. A departure from formula apportionment necessitates, in the first instance, a negative finding by the Director that such method does not fairly represent the extent of the taxpayer's business activities. If, under the guidelines pronounced herein, the Director, for valid reasons, determines that formula apportionment does not fairly represent the extent of business activities within the state, he may require in his discretion, if reasonable, any of the variations enumerated in 79-3288 that would effectuate an equitable allocation of income. The Director's discretion, in this regard, is not limited to merely substituting "separate accounting" as indicated by K. A. R. 92-12-53.

The trial court's judgment reversing the Board's order that a taxpayer is required under K. A. R. 92-12-53 to petition for a change in accounting methods as set forth in conclusion of law No. 2 is affirmed. In all other respects the judgment is reversed and the cause remanded with directions to remand the matter to the Director for redetermination in accordance with the provisions of the Uniform Act and consistent with the views expressed herein.

It is so ordered.

FONTRON, J., dissenting: I respectfully suggest that under rules

of appellate procedure to which this court has long adhered, the instant case should be reversed, period.

The Uniform Division of Income for Tax Purposes Act, K. S. A. 79-3271 to 79-3293, was adopted by the Kansas Legislature in 1963 "to provide for uniform allocation and apportionment of the state income taxes of any taxpayer doing a multi-state business." (*Western Natural Gas Co. v. McDonald*, 202 Kan. 98, 99, 446 P. 2d 781.) According to an article by Keesling and Warren, California's Uniform Division of Income for Tax Purposes Act, appearing in 15 UCLA Law Review 156, the Uniform Act was both drafted and sponsored by the National Conference of Commissioners on Uniform Laws, to promote uniformity in allocation practices among the states which impose taxes on or measured by income of corporations, and to relieve the pressure for congressional legislation in that field. (See, also, dissenting opinion of Chief Justice Callister in *Kennecott Copper Corp. v. State Tax Com'n*, 27 Utah 2d 119, 493 P. 2d 632.) It was no doubt in furtherance of such worthy objectives that the legislature enacted § 19 of the Act, now K. S. A. 79-3289, which reads as follows:

"This act shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it."

Adoption of the Uniform Act effected a philosophical change in the method of computing the taxable income of multi-state taxpayers. Whereas, under the former statute, G. S. 1949, 79-3217, use of the direct allocation or separate accounting method was the general rule, under the provisions of the Uniform Act, the apportionment or three-factor method became the prescribed method of allocating income, and any other system, including the separate accounting method, became the exception. The burden of proving an exception warranting the use of one of the alternative methods spelled out in K. S. A. 1973 Supp. 79-3288, that is, where the apportionment provisions of the Act do not fairly represent the extent of taxpayer's business activity in this state, rests upon the party who would invoke the exception. This, I believe, is the sense of the following proviso to 79-3288:

". . . That the burden of proof of any contrivance to evade taxes under this act shall rest upon the director of taxation or secretary of revenue."

In the case of *Donald M. Drake Co. v. Dept. of Rev.*, 263 Or. 26, 32, 500 P. 2d 1041, the Supreme Court of Oregon said that the use of any method other than apportionment should be exceptional and the party who seeks to invoke the exception has the burden of proof.

My disagreement with the majority of the court stems from the fact there is nothing in the record before the court to establish that the apportionment or three-factor formula does not, in fact, reflect the extent of Amoco's *business activity* in the state. So far as this record is concerned there is a complete absence of evidence produced either at the hearing before the director, at the hearing before the board of tax appeals or at the hearing in district court (where the reasonableness of the board's order was in issue) which tended to prove that the apportionment formula inadequately or inaccurately represented the extent of the taxpayer's business in Kansas. As I have said, the director had the burden of proving that the statutorily mandated three-factor formula was not capable of reflecting the extent of Amoco's Kansas business activities. As judged from the record, the director failed to sustain the burden which was his, and his failure in such respect should spell the end of this lawsuit.

The opinion of the court recites that the majority is unable to conclude, from the record here presented, that application of the formula or apportionment method clearly represents the business activities of Amoco in this state. I respectfully submit it is not the function of this court, on appeal, to conclude that the apportionment formula reflects the scope of Amoco's business activities in this state, clearly or otherwise; it is the court's appellate function to determine whether there is a basis in the evidence for the director's order requiring Amoco to pay income taxes computed on the separate accounting method. At the risk of being tediously repetitious, I repeat that the burden is on the director to establish that the apportionment formula does not fairly represent the extent of Amoco's business activities in Kansas and that it is not an accurate method of computing Amoco's Kansas income tax liability. There is no burden on the taxpayer to prove the converse of that proposition. Neither is Amoco required to prove that the director's order will result in its having to pay more than 100 percent of its total tax liability, as the majority opinion would seem to suggest.

In issuing his order assessing additional taxes against Amoco for the years 1968 and 1969, the director found that the separate accounting system used by the taxpayer in all prior years fairly represented the extent of the taxpayer's business activity in this state. However, the director failed to point out any factual basis for the finding, apparently preferring to rely on his other findings that

Amoco had used the separate accounting method in prior years and had not petitioned for permission to make a change. Even the court majority has said, and properly so, that the latter findings provided no basis for requiring Amoco to report on a separate accounting basis.

At oral argument counsel for the director, when queried as to what evidence the record contained to support the director's order, could point only to the corporate income tax returns filed for 1968 and 1969 on the basis of the three-factor system and the unsigned information returns for the same years furnished the director at his request, but figured on the separate accounting basis. It is true, as the majority opinion points out, there was a large disparity between the taxable income shown in the returns filed by Amoco and the taxable income shown in the unsigned information returns furnished the director. It is my opinion, however, that the contrasting returns showed no more than this: that where tax was figured according to the apportionment formula it was much less than if computed on the separate accounting basis. But the size of the tax is not the statutory criterion. Under the Uniform Act, tax liability is related to business activity within the state, and use of the separate accounting method is permissible only when the apportionment method does not fairly represent the extent of such business activity.

The adoption of the Uniform Act was the result of legislative decision. The mandate of the legislature is clear: The taxable income of a multi-state corporation attributable to Kansas is to be computed on the apportionment basis except where that method does not clearly reflect the extent of the taxpayer's Kansas business activity. In such case the director may require separate accounting to be used, but the burden rests upon him to justify his action. It hardly needs to be said that the legislative mandate is controlling.

It may be, as the district court appears to have assumed, that the apportionment system of accounting is, *per se,* inappropriate for computing tax liability within the oil industry, but it is for the legislature to decide whether the business activities of a taxpayer engaged in the oil and gas trade are to be excluded from the provisions of the Uniform Act. Unless legislative action to such effect is taken, it is incumbent on the director to follow the provisions of the Act with respect to a taxpayer engaging in oil and gas operations, and to require separate accounting only where there

is evidence that apportionment does not fairly represent the extent of its business activities in this state. As tending to bear on this point the majority points out that during 1968 and 1969 twenty-one states in which Amoco was doing business had income tax and of these only thirteen had adopted the Uniform Act. However, we were advised upon oral argument that now all but two have adopted the Act or turned to the apportionment method.

In summary, it is my opinion that the record contains no substantial evidence either to sustain the director's order assessing additional taxes based on the separate accounting method, or to support the conclusions reached by the board of tax appeals and by the district court to the effect that the director acted reasonably and within statutory requirements. Our rule has been, and I trust still is, that a finding which is not based on substantial competent evidence is not sufficient to support a judgment. ( *J. R. Watkins Co. v. Waldo,* 117 Kan. 250, 255, 230 Pac. 1051; *Potts v. McDonald,* 146 Kan. 366, 369, 69 P. 2d 685.)

Since, in my opinion, the judgment of the court below lacks substantial evidentiary support, I respectfully submit it should be reversed, not that another bite at the cherry may be taken, but that judgment might be entered in favor of the prevailing party.

FATZER, C. J., joins in the foregoing dissent.

FATZER, C. J., dissenting: I join in Justice Fontron's dissent; however, I wish to make an additional comment. Conflicting apportionment and allocation methods utilized in taxing multistate business are the most severe ailment of state taxation policies. The theory of apportionment by formula is that certain elements of a business will fairly reflect the measure of tax allocable to a state. Accordingly, the formula method has been recognized as a practical approach in the taxation of multistate business. ( *Gen. Motors v. District of Columbia,* 380 U. S. 553, 14 L. Ed. 2d 68, 85 S. Ct. 1156; *Harvester Co. v. Evatt,* 329 U. S. 416, 91 L. Ed. 390, 67 S. Ct. 444; Subcommittee on State Taxation of Interstate Commerce of the House Committee on the Judiciary, "State Taxation of Interstate Commerce," H. Rept. No. 1480, 88th Cong., 2d Sess., Vols. 1 and 2 [June 15, 1964], H. Rept. No. 565, 89th Cong. 1st Sess., Vol. 3 [June 30, 1965].)

It is my opinion that a multistate business is entitled to apportionment and allocation regardless of whether the power of taxation has

been exercised by another state. This is the fundamental premise of the Uniform Act. The purpose of the Act is uniform apportionment and allocation of business income, and not to insure all income of a multistate business will be taxed. (K. S. A. 79-3289.) Tax liability is to be computed on the basis of business activity, and a comparison between formula allocation and separate accounting to ascertain the higher tax, is not within the scheme of the Uniform Act.

Whether the apportionment formula correctly depicts a multistate business' activity in this state is dependent upon the facts of each particular case. A taxpayer's return when filed in accordance with applicable statutes speaks for itself. The party seeking to invoke the alternate taxing methods set out in K. S. A. 1973 Supp. 79-3288 has the burden of proof. In the instant case, the director failed to offer any evidence which would warrant the use of separate accounting.

Finally, in conjunction with apportioning the taxable income of a multistate business is the apportionment of any losses of that business. (*Bass, Etc., Ltd. v. Tax Comm.*, 266 U. S. 271, 69 L. Ed. 282, 45 S. Ct. 82.) I submit, continued diversity by the states in taxing multistate business will result in federal legislation establishing a mandatory method for apportionment and allocation of income.

Accordingly, I join with Justice Fontron in concluding this case should be reversed and that judgment be entered in favor of the taxpayer on the basis of the record presented.

FONTRON, J., joins in the foregoing dissent.